**Edith M. VIERO, etc., Plaintiff,**

v.

**Diane BUFANO, et al., Defendants.**

**No. 95 C 2281.**

United States District Court,
N.D. Illinois,
Eastern Division.

Oct. 13, 1995.

As Corrected Dec. 28, 1995.

---

Leo T. McGonigal, Chicago, IL, for Plaintiff.

Sandra Castillo, Assistant Attorney General, State of Ill., for Defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

Edith Viero ("Viero"), as Special Administrator of the Estate of her son John Rosario, Jr. ("Rosario"), has sued Illinois Juvenile Court Probation Officer Diane Bufano ("Bufano") and four employees of the Illinois Department of Corrections ("Department")—Marcia Little ("Little"), Victor Brooks ("Brooks"), Mr. Carter ("Carter") and Mr. Porter ("Porter")—under 42 U.S.C. § 1983 ("Section 1983"). Viero's Complaint alleges that Rosario's constitutional rights were violated while he was an inmate at the St. Charles Illinois Youth Correctional Facility ("St. Charles"), resulting in his death by suicide.

Bufano and Little have moved for dismissal of the Complaint under Fed.R.Civ.P. ("Rule") 12(b)(6),[1] claiming:

1. Viero states no claim under Section 1983 because she has not adequately alleged that Bufano and Little violated the Eighth Amendment.[2]

2. Bufano and Little are entitled to qualified immunity.

3. This action should be dismissed as an official capacity suit.

4. Bufano is entitled to absolute immunity under the doctrine of "quasi-judicial" immunity.

5. Viero has failed to state a claim under Illinois state law.

For the reasons stated in this memorandum opinion and order, this Court denies Bufano and Little's motion in its entirety, and Viero is granted leave to amend the Complaint to clarify the fact that she is suing defendants in their individual rather than their official capacities.

### Facts

On December 17, 1992 14–year–old Rosario was confined for mental treatment and evaluation at Hartgrove Hospital ("Hartgrove") in Chicago, Illinois, initially diagnosed as suffering from major depression. Hartgrove's records reflect that Rosario "expressed suicidal ideation during psychological and social work evaluations" there and also that he and his grandmother "related an incident in which he planned to take his own life by stabbing himself."[3] Sometime in Jan-

---

1. Familiar Rule 12(b)(6) principles require this Court to accept as true the Complaint's well-pleaded factual allegations, together with all reasonable inferences in Viero's favor (*Bowman v. City of Franklin*, 980 F.2d 1104, 1107 (7th Cir. 1992)). Dismissal is appropriate only if it appears beyond doubt that Viero can prove no set of facts consistent with the Complaint's allegations that would entitle her to relief (*Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984)). Hence the ensuing *Facts* section credits Viero's allegations in their entirety.

2. As always, this opinion adheres to the conventional and convenient (though technically imprecise) practice of referring to the underlying Bill of Rights provision (which of course imposes limitations only on the federal government) rather than to the Fourteenth Amendment (which applies to state actors and has been construed to embody such Bill of Rights guaranties).

3. Although Hartgrove's records were neither included nor incorporated by reference in the Complaint, they were adverted to in Viero's response to the motion to dismiss. Although it is somewhat problematic to consider them at this stage (see *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir.1984)), Viero's absolute right to amend the Complaint under Rule 15(a) makes it eminently sensible to credit her assertions now rather than later (see also *Early v.*

uary 1993 Rosario was discharged from Hartgrove with a "guarded" prognosis, a prescription for 10 milligrams of ritalin three times a day and a diagnosis of attention deficit hyperactivity disorder, severe psychosocial stresses and poor adaptive functioning.

Upon his discharge from Hartgrove, Rosario was placed in Department's custody and was taken to St. Charles. At the time of Rosario's intake Viero advised Little (an employee of Department located at St. Charles) of Rosario's mental history, medication needs and suicidal thoughts. Viero also told Bufano (Rosario's probation officer) of Rosario's mental history, diagnosis and condition and provided Bufano with his prescription medication.

Despite those warnings both Bufano and Little acted with a "total indifference to [Rosario's] safety":[4]

1. "Bufano failed to take steps to assure [Rosario] received his medication, and to assure that [Rosario's] mental health history, diagnosis and suicidal ideation were adequately communicated to the Illinois Department of Corrections."

2. "Little failed to assure that [Rosario] received his medication, and to assure that he received adequate counseling and observation in view of his mental history and diagnosis."

On March 2, 1993, while still in custody at St. Charles, Rosario committed suicide by hanging himself. That was a direct and proximate result of Bufano's and Little's failures.

### Section 1983 Claim

Section 1983 actions require a two-tiered showing: (1) "the conduct complained of was committed by a person acting under color of state law" and (2) "this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States" (*Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981)). Here Bufano and Little do not take

issue with the allegation that each was acting under color of state law. What they do challenge is Viero's ability to establish any constitutional violation.

For that purpose it is well to take a brief look at just which constitutional provisions are at issue. Although Complaint ¶ 11 speaks of the Fourth and Fourteenth Amendments, both sides' memoranda emphasize Eighth Amendment jurisprudence. And to the extent that those constitutional provisions may arguably implicate different standards, this Court cannot sort matters out in the present posture of the case. It is of course conventional wisdom that the Fourth Amendment protects arrestees, that the Fourteenth Amendment as such protects pretrial detainees and that the Eighth Amendment protects convicted prisoners. But the Complaint does not cabin Rosario within one of those categories, so it does not answer the question of which Amendment to apply.

■ Fortunately the Complaint's substantive allegations provide a way out of that dilemma. Because a pretrial detainee's due process rights are at least as great as a convicted prisoner's Eighth Amendment rights (*Hall v. Ryan*, 957 F.2d 402, 405 (7th Cir.1992)) and because Rosario was clearly one or the other, the question of Rosario's specific status—and a more specific determination of that status' accompanying rights—need not now be addressed if Viero's claim can meet the higher Eighth Amendment burden.

■ Any "prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate" (*Farmer v. Brennan*, —— U.S. ——, ——, 114 S.Ct. 1970, 1974, 128 L.Ed.2d 811 (1994))—including his or her indifference to the inmate's "serious medical needs" (*Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976)) or the substantial risk of the inmate's suicide[5]

*Bankers Life and Casualty Co.*, 959 F.2d 75, 79 (7th Cir.1992)). In any case, those records are not at all needed to support the Complaint's sufficiency.

**4.** Because only Bufano and Little have joined in the current motion to dismiss, this opinion does

not address the specific claims made against Brooks, Carter and Porter.

**5.** Although the Supreme Court has not expressly recognized a prisoner's right to be protected from self-inflicted harm, several Courts of Ap-

—violates the Eighth Amendment's prohibition of cruel and unusual punishment. To survive the present motion to dismiss, then, Viero must sufficiently allege (1) that Rosario presented a substantial risk of suicide or at least a serious medical need and (2) Bufano and Little were deliberately indifferent to that substantial risk or serious need.

*Suicide Risk*

■ As a special application of the already-stated Eighth Amendment principles, prison officials may not display deliberate indifference to a "strong likelihood" that an inmate will attempt suicide (*Torraco*, 923 F.2d at 235–36; *Edwards v. Gilbert*, 867 F.2d 1271, 1274–76 (11th Cir.1989)). As a measure of risk, *State Bank of St. Charles v. Camic*, 712 F.2d 1140, 1146 (7th Cir.1983) has contrasted "strong likelihood" with a "mere possibility."

■ Deciding whether an inmate presents a substantial enough risk of suicide to qualify as a "strong likelihood" (rather than a "mere possibility" or some other lesser degree of risk) involves a case-by-case fact-specific determination (see *Bell*, 937 F.2d at 1343–44, citing cases and discussing facts that tend to establish an increased risk of suicide—such as prior psychological counseling, unusual behavior, prior suicide attempts, or expressions of suicidal tendencies). At this threshold pleading stage, however, the question is only whether it appears beyond doubt that Viero can prove no set of facts that would show Rosario presented a substantial risk of suicide.

As already stated, Rosario was a 14–year–old with a history of severe psychological and psychosocial problems. Just a few months before his death he was confined for mental treatment and given a prescription for ritalin. And he had expressed his suicidal tendencies on at least two occasions.

From those allegations it cannot be said that Viero will undoubtedly be unable to establish that Rosario presented a substan-

tial suicide risk. That is enough to require denial of the Bufano–Little motion.

*Serious Medical Need*

■■ Even if the Complaint had not sufficiently alleged the existence of a substantial suicide risk, it would still survive the current motion, for nearly two decades ago *Estelle*, 429 U.S. at 104, 97 S.Ct. at 291 established that prison officials violate the Eighth Amendment when they are deliberately indifferent to an inmate's "serious medical needs." Although *Estelle* originally used the phrase in the context of physical health needs, it has since been applied to mental health needs as well (*Wellman v. Faulkner*, 715 F.2d 269, 272 (7th Cir.1983)).

■ To qualify for Eighth Amendment protection, a physical or mental health need must meet a threshold level of severity. For a brief discussion of the line between serious and non-serious medical needs, see this Court's opinion in *Leslie v. Doyle*, 868 F.Supp. 1039, 1045–46 (N.D.Ill.1994). As *Partee v. Lane*, 528 F.Supp. 1254, 1260 (N.D.Ill.1991) has put it:

> That a medical need is "serious," for the purpose of a section 1983 action, can be established either by showing that a physician has diagnosed it as mandating treatment or by demonstrating that the condition was so obvious that even a lay person would recognize the necessity of a doctor's attention.

In this instance the Complaint alleges that Rosario was diagnosed as suffering from several psychological disorders, he had recently been released from confinement for mental treatment and he was given a prescription for the drug ritalin. While the determination whether a physical or mental health need is serious may often involve some hair-splitting, Viero's allegations certainly suffice to survive a motion to dismiss.

*Deliberate Indifference*

■■■ That leads to the second half of the *Estelle–Farmer* formulation: the need to allege sufficiently that Bufano and Little displayed deliberate indifference to Rosario's

peals have extended the Supreme Court's Eighth Amendment analysis to prisoner suicide cases (see, e.g., *Torraco v. Maloney*, 923 F.2d 231, 235

(1st Cir.1991); *Bell v. Stigers*, 937 F.2d 1340, 1342–43 (8th Cir.1991); and cases cited in each).

plight (*Popham v. City of Talladega*, 908 F.2d 1561, 1563–64 (11th Cir.1990) (per curiam)). *Farmer*, —— U.S. at —— – ——, 114 S.Ct. at 1978–80 defined that Eighth Amendment standard (dealt with there in the context of prison officials' duty to protect against inmate-on-inmate violence) to be the equivalent of the criminal law's recklessness concept. Thus deliberate indifference goes beyond mere negligence and requires a showing of conscious disregard of a known risk or condition. It contains both a subjective inquiry—did the official know[6] of the risk or condition (*id.* at ——, 114 S.Ct. at 1979)?—and an objective inquiry—did the official take reasonable steps in response (*id.* at —— – ——, 114 S.Ct. at 1982–83)? Thus to be held liable Bufano and Little must have known of Rosario's serious medical needs or substantial suicide risk (or both) and must have acted in conscious disregard of that need or risk (or both) by failing to take adequate measures in response.[7]

Again the Complaint's allegations are sufficient to meet the *Farmer* standard of deliberate indifference. Viero alleges that she personally advised both Bufano and Little of Rosario's mental history and medication needs and also advised Little that Rosario had suicidal thoughts. That ascribes knowledge of Rosario's psychological problems and suicidal tendencies directly to Little and at least inferentially to Bufano.[8]

6. *Farmer, id.* at ——, 114 S.Ct. at 1981 (citation omitted) elaborated on the "knowledge" ingredient:

> Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.

7. One recurring problem that has muddied the waters of prisoner suicide case law has been the tendency of courts to merge their analysis of the inmate's suicide risk or medical need with their consideration of the prison official's "deliberate indifference" (see, e.g., *Bell*, 937 F.2d at 1342–43). Those inquiries should be kept separate to the extent possible, for they involve fundamentally different methods of analysis and are designed to serve different purposes.

8. It will also be recalled that Hartgrove's records reflect that Rosario expressed his suicidal thoughts on at least a couple of occasions.

■■■ Viero also alleges that Bufano and Little did not take adequate measures in response. Both failed to assure that Rosario received his medication, Bufano did not communicate mental health information to Department and Little did not see to it that Rosario received adequate counseling and observation. Those allegations—especially in light of the fact that on a Rule 12(b)(6) motion all reasonable inferences are to be drawn in Viero's favor—are enough to preserve the Section 1983 claim against dismissal.[9]

### Qualified Immunity

■■■ Bufano and Little also seek dismissal on qualified immunity grounds. That defense turns on the "objective legal reasonableness" of their actions (*Hall*, 957 F.2d at 404). And actions are considered objectively unreasonable if the allegedly-violated right is "clearly established in a sufficiently particularized sense at the time of the actions at issue" (*id.*). In other words, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right" (*Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)).

Here the "actions at issue" occurred between January and March 1993, when the law was already clear (as the earlier discus-

P.Mem. 1 does not make it clear whether copies of those records accompanied Rosario to St. Charles. If they did, their relevance to the deliberate indifference issue is obvious. If not, a rational factfinder might view Bufano's and Little's failure to obtain them as further evidence of their deliberate indifference in light of what Viero had already told them.

9. Complaint ¶ 11 alleges that Bufano and Little acted "with a total indifference to [Rosario's] safety." That suffices in the federal courts' notice pleading regime. Although the Bufano–Little motion frequently takes issue with the Complaint's "failure to allege facts," that is simply wrong. Because that misconception is encountered all too often among practitioners, this Court has particularly welcomed the recent strong reminder from our Court of Appeals that under the Rules no plaintiff is required to plead facts rather than conclusions, so long as those conclusions provide defendant with at least minimal notice of the claim (*Jackson v. Marion County*, 66 F.3d 151 (7th Cir.1995)).

sion shows) that prison officials violate the Eighth Amendment when they are deliberately indifferent to a strong likelihood that an inmate will commit suicide or to an inmate's serious medical needs relating to physical or mental health. While Bufano and Little admit in their motion and accompanying memoranda that this general principle was clearly established they argue that—in the context of the specific factual situation facing them—its contours were not sufficiently particularized to put a reasonable person on notice that their actions amounted to a violation.

■■■ But that position distorts the teaching of *Anderson* and its progeny. It is the essential equivalent of urging that the decided cases were white-horse cases while this is a black-horse case—a distinction without a difference. Here the Complaint sufficiently alleges (1) that Bufano and Little *knew* enough about Rosario's serious mental health needs and his substantial suicide risk to *require* them *to respond* and (2) that they nevertheless acted in conscious disregard of—in Eighth Amendment parlance, they were deliberately indifferent to—Rosario's serious medical needs and substantial suicide risk. That is enough to strip them of any putative qualified immunity because, as *Hamilton v. Endell*, 981 F.2d 1062, 1066 (9th Cir.1992) put it:

> A finding of deliberate indifference necessarily precludes a finding of qualified immunity; prison officials who *deliberately* ignore the serious medical needs of the inmates cannot claim that it was not apparent to a reasonable person that such actions violated the law.

Bufano and Little are not entitled to qualified immunity at this stage of the litigation.

#### Official Capacity

■■■ Bufano and Little also ask for dismissal because the Complaint purportedly seeks damages against them in their official capacities, a claim barred by the Eleventh Amendment. In support they invoke the bright-line rule announced in *Kolar v. County of Sangamon*, 756 F.2d 564, 568–69 (7th Cir.1985) that where a plaintiff does not specify that state-actor defendants are being sued individually, it will be presumed that they are being sued in their official capacities.

While that bright-line approach provides a useful means for weeding out claims that impermissibly seek to tap the state treasury, it is most often a trap for plaintiffs' counsel who really want to target individually named defendants but are unaware of the *Kolar* doctrine. After all, plaintiffs must perforce identify defendants as public officeholders to establish that they are state actors in order to bring Section 1983 into play at all. Thus *Kolar*, if applied blindly and rigorously,[10] may cause a Section 1983 complaint to carry its own inadvertent death warrant. This Court of course honors and applies *Kolar*, but in the present situation—where P.Mem. 5–6 says that this action (filed originally in the Circuit Court of Cook County under state, rather than federal, pleading rules) was intended as an individual action—the appropriate course is to let the Complaint stand on condition that Viero's counsel file an amendment to confirm that in writing.

#### Bufano and Quasi–Judicial Immunity

■■■ As quoted earlier, Complaint ¶ 11(a) alleges that Bufano "failed to take adequate steps to assure [Rosario] received his medication, and to assure that [Rosario's] mental health history, diagnosis and suicidal ideation were adequately communicated to the Illinois Department of Corrections." Juvenile Court probation officer Bufano claims that because she obtained information about Rosario in the course of performing a social investigation for purposes of a judicial dispositional hearing, she is entitled to absolute immunity because she was performing a function "intimately associated with the judicial phase of the criminal process." For that proposition

---

**10.** In other cases this Court has encountered defense motions based on *Kolar* even where the complaint's prayer for relief asks for punitive damages—a sure tipoff that the suit *must* be an individual-capacity and not an official-capacity action (*City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981)). Needless to say, such motions both deserve and get short shrift.

she points to *Spaulding v. Nielsen*, 599 F.2d 728, 729 (5th Cir.1979) (per curiam).

■ Although absolute immunity is generally not available to probation officers, our Court of Appeals (like the Fifth Circuit in *Spaulding* ) recognizes a "quasi-judicial" immunity for "[n]on-judicial officials whose official duties have an integral relationship with the judicial process" (*Henry v. Farmer City State Bank*, 808 F.2d 1228, 1238 (7th Cir. 1986)). But the burden of establishing entitlement to absolute immunity rests on its proponent (*Antoine v. Byers & Anderson, Inc.*, —— U.S. ——, —— 8 n. 4, 113 S.Ct. 2167, 2169 & n. 4, 124 L.Ed.2d 391 (1993); *Walrath v. United States*, 35 F.3d 277, 281 (7th Cir.1994)), and Bufano does not come even close to meeting that burden.

It is difficult to see how Bufano's failure to assure that Rosario received his medication and her failure adequately to communicate information as to Rosario's mental health has anything to do with the judicial process.[11] Merely because she was also preparing a report for use at a dispositional hearing, she is not shielded from the responsibility of conveying to Department the critical information that she had about Rosario's mental and physical health.[12]

### State Law Claim

■ Bufano and Little also argue, citing *Dezort v. Village of Hinsdale*, 35 Ill. App.3d 703, 711, 342 N.E.2d 468, 474 (2d Dist.1976), that to state a claim under Illinois law the Complaint must allege that Rosario was "incapable of exercising ordinary care for his own protection." *Dezort* imposes no such requirement.[13] Even apart from the fact that Illinois *pleading* rules do not apply in this federal court although Illinois *sub-*

stantive law provides the rules of decision (*Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965)), Bufano and Little are wrong under Illinois law as well.

■ They also support their motion to dismiss by making a cryptic argument about contributory negligence as a bar to recovery. This Court need not address the validity of that contention, for by definition no such potential affirmative defense taints the validity of a complaint.

### Conclusion

As stated at the outset of this opinion, the Bufano–Little motion to dismiss is denied on all grounds. Viero is granted leave to amend the Complaint on or before October 23, 1995 to confirm that this is an individual-capacity lawsuit. In the meantime (and understanding that such a nominal amendment, involving only the prayer for relief, is in the works), Bufano and Little are ordered to answer the existing Complaint on or before that same October 23 date. This action is set for a status hearing at 9 a.m. November 8, 1995.

---

**11.** That contrasts sharply with the judicially-linked situation in *Spaulding*.

**12.** Although neither side has addressed this issue, Illinois law does itself appear to impose a duty on Bufano to compile information and communicate it to Department. 705 ILCS 405/6–1(2)(f) requires a Probation Department "[t]o maintain an adequate system of case records" and make such reports to "authorized persons," and *id.* 405/6–1(2)(g) requires such a department "[t]o perform such other services as may be appropriate to effectuate the purpose" of the Juvenile Court Act of 1987.

**13.** That quoted language did not refer to a jailer's duty of care for his or her prisoner, but had to do instead with the defense of contributory negligence by reason of voluntary intoxication, an issue that has nothing to do with the disposition of this motion. Earlier *Dezort* had defined the duty of care owed to a prisoner (including that stemming from a risk of suicide) without imposing any such pleading requirement.