In the
United States Court of Appeals
For the Seventh Circuit

No. 01-1272

Kathleen F. Egebergh, individually
and as Special Administrator of the
Estate of Edward J. Fitzgibbons,

Plaintiff-Appellee,

v.

David Nicholson and Joseph Burdi,

Defendants-Appellants.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 96 C 5863--Paul E. Plunkett, Judge.

Argued September 5, 2001--Decided November 27, 2001

  Before Flaum, Chief Judge, and Posner and
Ripple, Circuit Judges.

  Posner, Circuit Judge.  This is a suit
under 42 U.S.C. sec. 1983 against two
police officers arising from the death of
Edward Fitzgibbons as a result, the
plaintiff claims, of the defendants'
deliberate indifference to Fitzgibbons's
diabetic condition. The defendants appeal
from the denial of their motion for
summary judgment on the ground of
qualified immunity.

  We have jurisdiction of such an appeal
only if there are no disputed material
issues of fact. Behrens v. Pelletier, 516
U.S. 299, 312-13 (1996); Johnson v.
Jones, 515 U.S. 304, 313-17 (1995);
Ruffino v. Sheahan, 218 F.3d 697, 701
(7th Cir. 2000); Clash v. Beatty, 77 F.3d
1045, 1048-49 (7th Cir. 1996); Anderson
v. Romero, 72 F.3d 518, 520 (7th Cir.
1995); Price v. Roark, 256 F.3d 364, 368
(5th Cir. 2001); Acevedo-Garcia v. Vera-
Monroig, 204 F.3d 1, 7 (1st Cir. 2000).
One purpose of official immunity is to
spare the official the burden of a trial,
Mitchell v. Forsyth, 472 U.S. 511, 525-26
(1985), and if critical facts are in
dispute the trial can't be headed off.
The facts found at the trial may show
that the official is entitled to

immunity, but at that point the only immunity possible to confer is immunity from having to pay damages, not immunity from having to bear the expense and inconveniences of a trial already held. No purpose would be served by trying to accelerate the determination of immunity to the pretrial stage if the existence of critical factual disputes precludes a grant of immunity then.

There are disputed facts here, as we'll see; and they may well be material. But as in LeMarbe v. Wisneski, 266 F.3d 429, 435 (6th Cir. 2001); Rohman v. New York City Transit Authority, 215 F.3d 208, 214 (2d Cir. 2000), and Salim v. Proulx, 93 F.3d 86, 90 (2d Cir. 1996), the defendants have stipulated that for purposes of their appeal we may take all the facts in the light most favorable to the plaintiff, thereby eliminating any factual dispute at this stage. Actually the stipulation is unnecessary; we have no choice but to construe the facts as favorably to the plaintiff as the record supports.

Defendants are entitled to immunity before trial (and therefore entitled to appeal immediately the denial of their motion for summary judgment on grounds of immunity) only if, even if the facts are construed as favorably to the plaintiff as the record permits, they still are entitled to immunity--in which event they shouldn't be put to the burden of a trial that might cast the facts in a light unnecessarily more favorable to them. As we said in Anderson v. Romero, supra, 72 F.3d at 520-21, "if there is no possible resolution of the disagreement that would save the plaintiff's case from the defense of immunity, the appellate court will not have to resolve any factual disagreements, or even decide whether there are material factual disagreements, in order to determine whether the defense is good." To the same effect see Tangwall v. Stuckey, 135 F.3d 510, 515-16 (7th Cir. 1998); Benefield v. McDowall, 241 F.3d 1267, 1270 (10th Cir. 2001); Johnson v. Martin, 195 F.3d 1208, 1214-15 (10th Cir. 1999); cf. Coady v. Steil, 187 F.3d 727, 730-31 (7th Cir. 1999)

The facts, taken as favorably to the plaintiff as the record permits, are as follows. Fitzgibbons, arrested for shoplifting, was an insulin-dependent

diabetic. Of the defendant officers, Nicholson and Burdi, the former knew that an insulin-dependent diabetic needs regular insulin injections and the latter that diabetes is potentially fatal. When booked by Burdi after being arrested, Fitzgibbons explained that he was an insulin-dependent diabetic and this was noted on the lock-up sheet. Someone from the police department called Fitzgibbons's sister and asked her to bring his insulin to the police station, which was done. He received an insulin injection at 8:20 p.m. the day of the arrest, when he was still at the station. This was noted in the shift supervisor's logbook--and also that Fitzgibbons would need another shot in the morning.

Nicholson, the supervisor of the morning shift, received and read the logbook and assigned Burdi to take Fitzgibbons to a bond hearing at a courthouse some 15 minutes away by car. Fitzgibbons told Burdi he needed another insulin shot. Burdi relayed the request to Nicholson, who told Burdi that Fitzgibbons didn't need a shot. (Nicholson denies telling Burdi this, but remember that for purposes of this appeal he is perforce conceding the truth of the plaintiff's evidence.) Nicholson told Burdi to tell Fitzgibbons that if he wanted the shot he might miss his bond hearing and therefore be detained for another day or two. Fitzgibbons was not given the shot and was taken to the courthouse for the hearing. There he complained to Burdi of feeling woozy and shaky. Burdi did nothing. Shortly afterwards he was informed by a sheriff's deputy that Fitzgibbons was "freaking out" in an adjacent room. Fitzgibbons, feeling better it seems, was taken before the judge. Bond was denied and he was shipped off to the Cook County Jail, arriving about 2 p.m. He was examined there by a doctor, who noticed that he was dehydrated. His condition deteriorated rapidly, and he was dead by 11 p.m. as a consequence of having missed the morning shot.

From these facts a reasonable jury could infer that Nicholson and Burdi were deliberately indifferent to Fitzgibbons's welfare. They knew he was an insulin-dependent diabetic. They knew (Nicholson certainly, Burdi probably) that diabetics can be seriously harmed by being deprived

of insulin. They did not intend Fitzgibbons's death; nor, we may assume, did they know that missing one shot of insulin could kill him. But a jury could infer that they knew that depriving him of his morning shot would endanger his health and that they deprived him of it for no better reason that to get him out of the police station. In short, a jury could infer that the defendants knowingly exposed Fitzgibbons to a substantial danger to his health for no good reason; that is a good definition of deliberate indifference. See West By and Through Norris v. Waymire, 114 F.3d 646, 651 (7th Cir. 1997); Duckworth v. Franzen, 780 F.2d 645, 653 (7th Cir. 1985) ("if a prisoner tells the prison doctor that he is allergic to penicillin, but the doctor injects him with penicillin anyway and the prisoner has a severe reaction, the doctor is guilty of having inflicted a cruel and unusual punishment; . . . the doctor knows there is a great danger, could avert it at trivial cost, . . . but instead ignores it"); White v. Napoleon, 897 F.2d 103, 111 (3d Cir. 1990) ("the amended complaint, fairly read, suggests that the doctor deliberately treated Sabb with an inappropriate drug for no valid reason. This is sufficient to state a claim for deliberate indifference to serious medical needs").

A trial may of course cast the facts in a different light. But construed as they must be for purposes of this appeal, they defeat the motion for qualified immunity.

Affirmed.