In the

# United States Court of Appeals
## For the Seventh Circuit

No. 01-3745

JOANN CAVALIERI, AS PLENARY GUARDIAN
OF THE ESTATE OF STEVEN CAVALIERI,
A DISABLED PERSON,

*Plaintiff-Appellee,*

*v.*

DONALD SHEPARD,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 99-CV-2121—**Michael P. McCuskey**, *Judge.*

ARGUED MAY 24, 2002—DECIDED FEBRUARY 24, 2003

Before POSNER, MANION, and DIANE P. WOOD, *Circuit Judges.*

DIANE P. WOOD, *Circuit Judge.* Steven Cavalieri is in a vegetative state after attempting suicide in a holding cell in the Champaign County Correctional Facility (the CCCF). Steven's mother, Joann Cavalieri, brought this action under 42 U.S.C. § 1983 as the guardian of her son's estate, claiming that Steven attempted suicide after Donald Shepard, a police officer with the City of Champaign (the City), and others acted with deliberate indifference to his risk of suicide. Shepard now appeals from the dis-

trict court's denial of his motion for summary judgment and claim of qualified immunity. We affirm.

**I**

Although this is an interlocutory appeal, Shepard is entitled to bring it now, because he is raising the question whether he should have prevailed on his defense of qualified immunity, based on the facts taken in the light most favorable to Mrs. Cavalieri. See *Mitchell v. Forsyth*, 472 U.S. 511, 525-26 (1985). We must resolve a qualified immunity issue as early as possible in the proceedings, because it is an "*immunity from suit* rather than a mere defense to liability." *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (emphasis in original). We present the facts below in the light most favorable to Mrs. Cavalieri, because we have no appellate jurisdiction to the extent disputed facts are central to the case. See *Johnson v. Jones,* 515 U.S. 304 (1995).

On June 4, 1998, Steven kidnaped Stephanie Rouse, his former girlfriend, and took her from Champaign to a remote area of Urbana. Using a gun, he threatened to kill both Rouse and himself. Rouse convinced Steven to drive back to town, and then she called his mother from a public phone. After speaking with Rouse, Mrs. Cavalieri called the Crisis Hotline in Champaign County. Rouse later placed a call to the Crisis Hotline as well. The Crisis Hotline contacted the Metropolitan Computer Aided Dispatch (METCAD), which called the City Police Department.

The Champaign Police Department dispatched two officers who were instructed that there was a hostage situation involving a man with a gun. At approximately 3:00 a.m., the officers knocked on Rouse's door; a male responded, but he refused to let the officers inside. The officers then called a hostage negotiation team and

contacted Rouse by telephone. Rouse denied that Steven was present and that she might need assistance, but she also refused to leave her apartment. This standoff continued for several hours until approximately 6:00 a.m., when a member of the hostage negotiation team spoke with Mrs. Cavalieri. She advised the officers that her son was suicidal and needed to go to a hospital.

About an hour later, the SWAT team entered the apartment using pepper spray. They immediately handcuffed and removed all the occupants, including Steven, who was found hiding under a kitchen cabinet. Rouse was briefly interviewed at the scene. After the SWAT team located Steven, Rouse informed the officers of the events of the evening, specifically telling them that Steven had threatened to kill both himself and her.

After Steven arrived at the City jail, he met with defendant Shepard for approximately one hour. Steven asked Shepard if he could speak to a mental health counselor, and Shepard explained that jail personnel would arrange for him to speak with someone. At around 10:00 a.m., Steven was transferred to the CCCF. Despite the official transfer, Shepard remained personally involved with the case and continued to participate in interviews with both Rouse and Mrs. Cavalieri.

First, Shepard joined an ongoing interview with Rouse. Rouse explained once again that Steven had threatened to kill her and commit suicide himself. Rouse also told Shepard that this kidnaping came just a month after Steven was arrested for criminal trespass at Rouse's apartment. Finally, Rouse told Shepard that Steven claimed that he would kill himself if he ever returned to jail.

Next, Shepard interviewed Mrs. Cavalieri. Mrs. Cavalieri told Shepard that she wanted to make arrangements to ensure that her son saw a counselor. She also explained that her son's mental condition was fragile, and she told

Shepard about the calls to the Crisis Line the night before. Finally, she told Shepard that Steven had been on suicide watch the month before at the CCCF, while he was being held there in conjunction with his criminal trespass arrest. Shepard advised Mrs. Cavalieri that Steven's mind was "on overload," that he seemed very upset, and that he believed Steven would need counseling. Mrs. Cavalieri told Shepard that Steven needed to be on suicide watch and should not be left alone. Shepard responded by promising Mrs. Cavalieri that Steven would not be alone.

Around 11:00 a.m., Shepard called the CCCF to speak with Steven. He informed Steven that Mrs. Cavalieri was with him and that she would arrange for him to have a counselor. During this conversation Steven told Shepard that he was doing fine and that he was looking forward to seeing his mother. Shepard then directed Mrs. Cavalieri to County Mental Health so that she could arrange for Steven to speak with a counselor.

Shepard asserts that after completing these interviews, he did not subjectively believe that Steven was a suicide risk. He emphasizes that Steven seemed calm when they spoke on the phone, was without weapons, and that during their phone conversation he stated that he was doing fine. Unfortunately, this was far from the case.

After Steven was transferred to the CCCF, he was not placed on suicide watch. Steven himself did not alert the CCCF staff to the fact that he was having suicidal thoughts. Indeed, during his intake he denied all the events of the early morning (having the gun, harming or threatening anyone, having suicidal thoughts or ever attempting to commit suicide). He did ask to speak to a mental health advisor, and was told he would receive one, but no advisor came before his attempt on his life. Steven was assigned to a holding cell in the booking area while he awaited further processing. The holding cell contained

a telephone with a strong metal cord. Later that afternoon, Shepard called the CCCF to instruct the guards to put a stop to Steven's phone calls, as he had been making annoying calls to Rouse. Shepard was then informed that around 2:10 p.m., Steven had been found unconscious, hanging from the wire telephone cord. To this day, he has not regained consciousness and remains in an unresponsive state. He now lives in a nursing home near his mother.

## II

As the Supreme Court recently reminded us, in order to decide whether a defendant is entitled to qualified immunity, we must first determine whether (taking the facts in the light most favorable to the plaintiff) a constitutional right was violated, and second, if those facts would demonstrate a violation, we must decide whether the right in question was clearly established at the time the events took place. *Saucier*, 533 U.S. at 200. We review these issues *de novo*, *Dufour-Dowell v. Cogger*, 152 F.3d 678, 680 (7th Cir. 1998). Viewing the record in the light most favorable to Mrs. Cavalieri, we conclude that Shepard can prevail in this case only if certain disputed facts are resolved in his favor by a trier of fact. Put differently, taking the facts from the required perspective, we conclude that Steven's constitutional rights were violated and that these rights were clearly established as of mid-1998.

## A

As an initial matter, we must determine whether Mrs. Cavalieri has alleged facts that would show that Shepard's conduct violated her son's constitutional rights. Mrs. Cavalieri first claimed violations of the Fourth Amend-

ment, but she now correctly asserts that Steven's claim, which she is pursuing as his guardian, arises (if at all) under the Fourteenth Amendment. See *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979). The Eighth Amendment does not apply to pretrial detainees, but as a pretrial detainee, Steven was entitled to at least the same protection against deliberate indifference to his basic needs as is available to convicted prisoners under the Eighth Amendment. *Id.*; *Payne v. Churchich*, 161 F.3d 1030, 1039-41 (7th Cir. 1998); *Tesch v. County of Green Lake*, 157 F.3d 465, 473 (7th Cir. 1998). Under both the Eighth and Fourteenth Amendment standards, the plaintiff has the burden of showing that (1) the harm to the plaintiff was objectively serious; and (2) that the official was deliberately indifferent to her health or safety. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994); *Payne*, 161 F.3d at 1041 ("A detainee establishes a § 1983 claim by demonstrating that the defendants were aware of a substantial risk of serious injury to the detainee but nevertheless failed to take appropriate steps to protect him from a known danger.").

The question is whether Shepard was aware that Steven was on the verge of committing suicide (which, if it occurred, surely would qualify as a serious harm). If the trier of fact believes Mrs. Cavalieri's account, the answer is yes. We realize that according to Shepard, the only facts available to him were (1) Rouse's statement that Steven attempted to kill her and himself, but that she had calmed him down and he apologized; (2) that Steven was calm when interviewed; (3) that Steven did not have a weapon and was under custody; and (4) that Steven said he was fine when Shepard spoke with him over the phone. Unfortunately for Shepard, if other evidence in the record is credited, a trier of fact could conclude that he knew much more. Since we must take the facts in the light most favorable to Mrs. Cavalieri, we must also consider four additional facts: (1) that Shepard told Mrs.

Cavalieri that Steven was upset during his interview; (2) that Mrs. Cavalieri told Shepard that Steven should be on suicide watch; (3) that Shepard knew that Steven had been on suicide watch only a month before; and (4) that Rouse told Shepard that Steven had warned her that he would kill himself if he was ever returned to the jail.

Shepard argues that the fact that Steven had no weapon with him and was under the CCCF's custody trumps the testimonial evidence of the information he had at his disposal. Unfortunately, these precautions are not always enough to prevent this kind of event. Although weapons are obviously not permitted in jails and prisons, there are high rates of suicide in prisons (higher than in the general population), and even higher rates among pretrial detainees. See, *e.g.*, *Jutzi-Johnson v. United States*, 263 F.3d 753, 757 (7th Cir. 2001). As a result, prisons and jails have developed procedures for dealing with prisoners who display suicidal tendencies, such as removing items that could be used as a suicide weapon, like sheets or a sturdy telephone cord, or not leaving those prisoners unattended.

Shepard's deposition testimony that he did not think Steven was on the verge of suicide is also not enough to eliminate a genuine issue of fact. We recognize that "strange behavior alone, without indications that that behavior has a substantial likelihood of taking a suicidal turn, is not sufficient to impute subjective knowledge of a high suicide risk to jail personnel." *Estate of Novack ex rel. Turbin v. County of Wood*, 226 F.3d 525, 529 (7th Cir. 2000). Indeed, had no one informed Shepard that Steven was at risk of suicide, this would be a different case. But both Mrs. Cavalieri and Rouse testified that they had alerted Shepard to this specific risk. Shepard was not forced to operate only on the basis of a brief observation, *cf. Mathis v. Fairman*, 120 F.3d 88, 91-92 (7th Cir. 1997)

(odd or unusual behavior without more did not place officers on notice that a detainee was at risk for suicide when the officers were unaware of any suicidal tendencies in the detainee). In the present posture of this case, we must take as a given that Shepard was aware that Steven had been arrested for attempting to kill both himself and Rouse, and that he had learned from both women that Steven was at risk for suicide.

Even assuming that Shepard knew about Steven's suicidal inclinations, Mrs. Cavalieri cannot prevail on Steven's claim unless she can also establish that Shepard acted with deliberate indifference to this risk. Deliberate indifference "describes a state of mind more blameworthy than negligence," and "something less than acts or omissions . . . with knowledge that harm will result." *Farmer*, 511 U.S. at 825. Applying a subjective recklessness test, the Court in *Farmer* found that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." *Id*. at 837. The same holds for a pretrial detainee's claim under the Fourteenth Amendment. Although this is a "high hurdle for a plaintiff," *Peate v. McCann*, 294 F.3d 879, 882 (7th Cir. 2002), he "need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer,* 511 U.S. at 842.

Shepard insists that he did all that was required of him, and that even on the record taken in the light most favorable to Steven, no reasonable trier of fact could find that he was deliberately indifferent to Steven's suicide risk. He focuses on two specific actions he took: first, his telephone call to Steven to "check on his welfare" and tell him that his mother was coming to see him, and

second, his offer to Mrs. Cavalieri to help her arrange for Steven to see a counselor. Of course, Shepard was not required to take perfect action or even reasonable action, even assuming he was aware of the suicide risk; his action must be reckless before § 1983 liability can be found. *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001). On the other hand, Mrs. Cavalieri is not required to show that Shepard intended that Steven harm himself. *Boncher v. Brown County*, 272 F.3d 484, 487 (7th Cir. 2001). On this record, we conclude that the facts taken most favorably to Mrs. Cavalieri would show that Shepard was deliberately indifferent to Steven's safety. Indeed, if we consider Mrs. Cavalieri's version of events, Shepard may have deliberately misled her. He told her that Steven would not be alone and he also behaved as if he understood the severity of the information she provided him regarding Steven's mental health, yet he did not even take immediate measures that would have been quite easy for him, such as passing her warnings along to the CCCF staff. Perhaps Mrs. Cavalieri would have gone directly to the CCCF if she had known that Shepard did not intend to inform anyone of their conversation. Moreover, Shepard had multiple opportunities to present this information to the CCCF. His two calls to the CCCF demonstrate the ease with which he could have conveyed the information after Steven was transferred. Perhaps a jury would not believe this version, but on this record, a jury could find that Shepard's actions were reckless.

**B**

Having established that Mrs. Cavalieri has alleged facts that, if proven, show that Shepard violated a constitutional right, we must still address Shepard's argument that he is entitled to qualified immunity because the

constitutional right Steven is asserting was not clearly established at the time of these events. *Saucier*, 533 U.S. at 201. Whether a right is clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id*. The right must be clear enough that "a reasonable official would understand that what he is doing violates that right." *Id*. at 202. Although the officer must have knowledge of the right, it is not necessary that a case be "on all fours" with this one for the case to go to a jury. *Montville v. Lewis*, 87 F.3d 900, 902 (7th Cir. 1996). Instead, the question we must ask is whether the law provided Shepard with "fair warning" that his conduct was unconstitutional. *Hope v. Pelzer*, 122 S.Ct. 2508, 2516 (2002) (rejecting the Eleventh Circuit standard that a previous case must be "fundamentally similar" to be clearly established).

Although Shepard and Mrs. Cavalieri differ over how the constitutional right should be characterized, we agree with the district court that at bottom, the right Mrs. Cavalieri asserts on behalf of Steven is the right to be free from deliberate indifference to suicide. There is no doubt that this right was clearly established prior to Steven's 1998 suicide attempt. See *Hall v. Ryan*, 957 F.2d 402, 406 (7th Cir. 1992).

Shepard argues, however, that the present case represents an extension of earlier law because Steven was transferred from the custody of the Champaign Police Department (his employer) to the custody of the CCCF, a county facility. He likens this case to *Collignon v. Milwaukee County*, 163 F.3d 982 (7th Cir. 1998), in which this court found that Milwaukee County was not responsible for the suicide of a pretrial detainee who killed himself after being released to his parents. The most important difference between *Collignon* and this case, however, is that in *Collignon* the detainee left state custody upon his transfer, and here Steven remained in

state custody. Nothing in *Collignon* implies that the court was establishing a general rule of non-liability for transferees. In fact, Shepard's argument implies that he did not have to pass along *any* information to his colleagues in the county jail. No responsible officer in Shepard's position would have taken such a position. If Steven had been armed, Shepard could not have stayed silent and waited to see if the CCCF officials found the weapon; if Steven was prone to violent outbursts, Shepard similarly could not have left his colleagues and the other county detainees at Steven's mercy. While there are different arms of state government, the walls between them are not as high as Shepard implies. To the contrary, each must keep the other informed about material facts, including suicide risks. See *Farmer*, 511 U.S. at 832 (officials required to take adequate measures in response to known risk); see also *Viero v. Bufano*, 901 F.Supp. 1387, 1394 (N.D. Ill. 1995) (adequate measures include communicating likely suicide risk to transferee correctional facility). Even the *Collignon* court conceded that it would have been facing a different problem if the officials had known that the detainee was a likely suicide risk. *Id.* at 990.

Of course, the law did not require Shepard to sit by the telephone all day, communicating with the CCCF about transferred prisoners. The question is what he was supposed to do in the face of the knowledge of a life-threatening situation that he actually had. He made several telephone calls to the CCCF, but he passed by the opportunity to mention that he had been informed that Steven was a suicide risk, and that the jail itself had recognized this only a month earlier. If Shepard had known that a detainee had an illness that required life-saving medication, he would also have had a duty to inform the CCCF, or any other entity that next held custody over the detainee. See *Egebergh v. Nicholson*, 272 F.3d 925, 927-28 (7th Cir. 2001) (denying a qualified immunity defense

where police officers knew that the arrestee was an insulin-dependent diabetic, knew that such people need regular insulin injections, knew that the failure to give injections was potentially fatal, and nonetheless failed to make sure the injections were given, with fatal consequences).

We conclude that the law as it existed at the time of Steven's suicide attempt provided Shepard with fair notice that his conduct was unconstitutional. *Hope*, 122 S.Ct. at 2516. The rule that officials, including police officers, will be "liable under section 1983 for a pre-trial detainee's suicide if they were deliberately indifferent to a substantial suicide risk," *Hall v. Ryan*, 957 F.2d 402, 406 (7th Cir. 1992), was clearly established prior to 1998. The fact that several state agencies were working together on his case, and that Steven happened to attempt suicide in the county's facility rather than at the police station, does not change this analysis.

## III

The judgment of the district court is AFFIRMED.

MANION, *Circuit Judge*, dissenting. The threshold inquiry we must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). I disagree with the court's conclusion that the facts most favorable to the plaintiff are sufficient to allow a jury to conclude that Officer Shepard acted with deliberate indifference or with a reckless disregard for Steven Cavalieri's safety while Steven was detained at

the Champaign County Correctional Facility (CCCF). Even if Shepard violated Steven's constitutional right by not informing CCCF of his suicide risk, he may nevertheless be shielded from liability for civil damages if his actions did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A constitutional right is clearly established when its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right. . . . [I]n the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). In this case, Shepard did not have reasonable notice at the time of Stephen's incarceration that the conduct alleged by the plaintiffs was unconstitutional. I therefore respectfully dissent.

The court finds that because Shepard failed to communicate Steven Cavalieri's possible suicide risk to intake officials at the CCCF, a jury could find that Shepard was deliberately indifferent under the Eighth and Fourteenth Amendments. Under the deliberate indifference standard Mrs. Cavalieri must allege facts that show that Shepard was aware of Steven's suicide risk and nevertheless acted or failed to act with deliberate indifference to a substantial risk of serious harm to Steven's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 836 -37 (1994). *See also West v. Waymire,* 114 F.3d 646, 651 (7th Cir. 1997) ("plaintiff must prove that the defendant, knowing that the plaintiff (or someone) was at serious risk of being harmed, *decided not to do anything* to prevent that harm from occurring even though he could easily have done so") (emphasis added). Because suicide is a serious medical risk, the alleged facts in this case must show, under the deliberate indifference standard, that Shepard demonstrated a "reckless disregard for the known serious medical need, by inaction or woefully inadequate action."

*Hudson v. McHugh*, 148 F.3d 859, 863 (7th Cir. 1998); *Sanville v. McCaughtry*, 266 F.3d 724, 740-41 (7th Cir. 2001) (holding that "[t]o be liable under the Eighth Amendment for an inmate's suicide, 'a prison official must be cognizant of the significant likelihood that an inmate may imminently seek to take his own life and must fail to take reasonable steps to prevent the inmate from performing this act'" (citation omitted)). An official may not be liable for mere negligence. *Farmer*, 511 U.S. at 836. *See also*, *Soto v. Johansen*, 137 F.3d 980, 981 (7th Cir. 1998) ("mere negligence or even gross negligence does not constitute deliberate indifference") (internal quotations and citation omitted). Moreover, officials may also escape liability "if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. However, by labeling as deliberate indifference Shepard's failure to communicate Steven's mother's and girlfriend's concerns over his suicide risk to CCCF intake officials, the court has equated deliberate indifference with negligence. It is undisputed that Shepard did in fact take responsive action to Steven's emotional distress, but the court incorrectly holds that a jury could find that Shepard violated Steven's constitutional rights because he did not follow a better course of action.

The facts most favorable to Mrs. Cavalieri cannot establish that Shepard was deliberately indifferent to Steven Cavalieri's risk of suicide. Instead, under the "woefully inadequate" standard, *Hudson*, 148 F.3d at 863, Shepard's rather intensive involvement with Steven should reduce rather than increase his liability for deliberate indifference. Nevertheless, it appears that court faults Shepard for being too attentive by remaining personally involved with the case.

After he arrived for duty, Shepard was sent to the location where Steven had just been captured after

the kidnapi ng and three-hour standoff with the SWAT team. As the plaintiff's brief notes, "A SWAT operation is a major event, and one involving hostages did not occur often in Champaign." Clearly everyone at the correctional facility was fully aware of the crisis, as well as Shepard when he conducted a one-hour interview with Steven at the city jail after he was first arrested. Steven was then transferred to the CCCF, where he had been incarcerated under suicide watch only weeks earlier.

After the arrest, Shepard participated in an interview with the victim, Stephanie Rouse, where she spoke of Steven's suicide threats. He also interviewed Steven's mother where she informed him that she wanted to make arrangements for Steven to see a counselor. Mrs. Cavalieri also informed Shepard that during Steven's stay at CCCF one month earlier he was on suicide watch. Shepard placed a subsequent call to Steven at the CCCF at 11:00 a.m. where he informed Steven that his mother would be contacting him about counseling. During this last discussion, Steven told Shepard that he was fine and looking forward to seeing his mother. Finally, Shepard directed Mrs. Cavalieri to County Medical Health so that she could arrange for Steven to speak to a counselor. When Shepard called the CCCF three hours later to inform them that Rouse had complained that Steven was making harassing calls to her, he was informed that Steven had attempted suicide.

This hands-on activity on Steven's behalf cannot be described as deliberate indifference to Steven's condition. No doubt, in Shepard's two calls to the CCCF he had ample opportunity to inform someone that he thought Steven might pose a suicide risk. Yet one of those calls was specifically placed to Steven personally in order to check on his welfare and inform him about Mrs. Cavalieri's ongoing efforts to secure counseling. As a matter of law, Shepard's time, attention and concern were reasonable

responses to Cavalieri's suicide risk and therefore cannot be described as "woefully inadequate." *See Perkins v. Lawson,* 312 F.3d 872, 875-76 (7th Cir. 2002) (finding no deliberate indifference when steps were taken to obtain treatment for inmate); *State Bank of St. Charles v. Camic*, 712 F.2d 1140, 1146 (7th Cir. 1983) (finding officers had not acted with deliberate indifference because, in part, they had taken reasonable actions to prevent suicide).[1]

---

[1] Deliberate indifference has been found when the state actor did nothing or next to nothing in response to a substantial suicide or health risk. *See Egebergh v. Nicholson*, 272 F.3d 925, 927-28 (7th Cir. 2001) (holding that a jury could infer that police officers were deliberately indifferent to insulin dependent patient when they transported him to another jail without administering an insulin shot); *Sanville v. McCaughtry*, 266 F.3d 724, 740-41 (7th Cir. 2001) (holding that plaintiff had stated a claim of deliberate indifference as to prison guards when they did nothing for several hours in response to suicidal prisoner's covering of the window of his prison cell); *Reed v. McBride,* 178 F.3d 849, 854 (7th Cir. 1999) (holding that where prison officials knew about periodic substantial deprivations of food and medicine to a prisoner and did nothing for almost two years to remedy the situation, the prisoner met his burden to show an inadequate response). *See also, Jacobs v. West Feliciana Sheriff's Dept.,* 228 F.3d 388, 395-99 (5th Cir. 2000) (holding that sheriff and deputy could be found to be deliberately indifferent to plaintiff's suicide risk when they took some preventative measures but those measures were obviously inadequate and therefore not objectively reasonable); *Woodward v. Myres*, 2002 WL 31744663 (N.D. Ill. 2002) (finding that plaintiff had alleged sufficient facts to establish that intake nurse, sheriff and correctional facility doctor had acted with deliberate indifference when no actions were taken protect suicidal detainee); *Wilson v. Genessee Co.*, 2002 WL 745975 (E.D. Mich. 2002) (finding arresting officers could be found deliberately indifferent when they did nothing in response to arrestee's substantial suicide risk); *Viero v.*
(continued...)

When examining a claim for deliberate indifference we are obligated to examine the totality of the circumstances surrounding the alleged actions or inaction. *Dunigan ex rel. Nyman v. Winnebago County*, 165 F.3d 587, 591 (7th Cir. 1999); *see also Gutierrez v. Peters*, 111 F.3d 1364, 1375 (7th Cir. 1996) (holding that isolated instances of neglect "cannot support a finding of deliberate indifference"). At most it was a negligent act for Shepard not to inform CCCF (where Steven had been under suicide watch only a month earlier) of Steven's current suicide risk. *See Lewis v. Richards*, 107 F.3d 549, 553-54 (7th Cir. 1997) (stating that "[e]xercising poor judgment, however, falls short of meeting the standard of consciously disregarding a known risk to his safety"). Under the court's analysis, would Shepard be off the hook had he not shown continued concern for Steven's case and not spent additional time with the victim and his mother? Had Shepard simply called CCCF and said that Steven was a possible suicide risk, he apparently would have been dismissed from the case with the other defendants.

Deliberate indifference cannot rest on negligent actions or inactions, but must instead rest on reckless indifference to the plight of an inmate. *See Mathis v. Fairman,* 120 F.3d 88 (7th Cir. 1997) (holding that prison officials could not be held liable under the reckless disregard standard for a prisoner's suicide when their actions were negligent at most). A single example of alleged neglect, based on choosing one reasonable course of action over another, will not create a jury question as to deliberate indifference,

---

[1] (...continued)
*Bufano,* 925 F.Supp. 1374, 1384 (N.D. Ill. 1996) (finding that a fact question existed as to officer's deliberate indifference when officer did not take any reasonable steps in response to suicide risk of transferee).

especially when the court has previously held that "showing deliberate indifference *through a pattern of neglect* entails a heavy burden." *Dunigan*, 165 F.3d at 591 (7th Cir. 1999) (emphasis added). The standard threshold for "liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998). By equating possible negligence with deliberate indifference the court has impermissibly lowered the bar for prisoner claims under the Eighth and Fourteenth Amendments.

Even if we were to proceed with the qualified immunity analysis it has not been established that under the facts of this case, "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. Under the standard for liability for deliberate indifference described in *West v. Waymire*, it is clear that Shepard did, in fact, *do something* to alleviate the risk of Steven's suicide. *West*, 114 F.3d at 651. Under this standard, and the wealth of case law equating deliberate indifference with inaction or woefully inadequate action, *supra* n. 1, Shepard would not have understood that his conduct was unlawful. The court cites *Viero v. Bufano*, 901 F.Supp. 1387 (N.D. Ill. 1995), as standing for the proposition that adequate measures in response to a suicide risk necessarily include communicating such risk to personnel at the correctional facility. In a subsequent proceeding in that same case, the district court noted that the officer did much less than just fail to communicate the prisoner's substantial risk of suicide to the committing institution. *Viero v. Bufano,* 925 F.Supp. 1374, 1384 (N.D. Ill. 1996). The officer also failed to take the prisoner's Ritalin prescription from her mother, and, in short, failed to "take any such reasonable steps in response" to the victim's medical needs. That is not what occurred in this case. The court also cites *Egebergh v. Nicholson,* 272 F.3d 925, 927-28 (7th Cir. 2001) as relevant to the

proposition that an officer must communicate all known medical information to the custodial entity. However, in *Egebergh* the officers in question were not liable for deliberate indifference because they failed to communicate to Cook County Jail personnel that the diabetic prisoner had future medical needs. *Id.* Rather, the court stated that "a jury could infer that they knew that depriving him of his morning shot [when he was in the offending officer's sole custody] would endanger his health and that they deprived him of it for no better reason than to get him out of the police station." *Id.* at 928. I agree with the court that on the date of Cavalieri's nearly successful suicide attempt it was clearly established that a police officer on duty could not act with deliberate indifference toward a pretrial detainee who the officer believed was a substantial suicide risk. *Estate of Cole v. Fromm,* 94 F.3d 254, 258 (7th Cir. 1996). However, under this standard, an officer is only required to act reasonably, and as a matter of law, Shepard took reasonable actions in this case.

Obviously if a jury believes Shepard when he testifies that he honestly believed, after talking with Steven, that he was not a suicide risk at that time, he will not be found to be deliberately indifferent. But before going to a jury the plaintiff must allege that Shepard knew of the risk (not just should have known), knew that he should inform CCCF personnel of the risk, but deliberately or recklessly failed to do so. Instead, the plaintiff has at most alleged a negligent failure to inform CCCF of the suicide risk. That is not enough. Shepard should have been granted summary judgment along with the other named defendants.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*