**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Submitted July 15, 2009[*]
Decided July 24, 2009

**Before**

RICHARD D. CUDAHY, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 08-3388

| | |
|---|---|
| SHAUN J. MATZ, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Eastern District of Wisconsin. |
| | |
| *v.* | No. 05-C-1093 |
| | |
| MATTHEW FRANK, et al., | Rudolph T. Randa, |
| *Defendants-Appellees.* | *Chief Judge.* |

**O R D E R**

Wisconsin inmate Shaun Matz suffered serious injuries from self-inflicted wounds several times in 2005 while housed in a segregation cell at Waupun Correctional Institution. In this civil-rights action against several employees of the corrections department, Matz alleges that his injuries resulted from suicide attempts prompted by untreated mental illness. The district court granted summary judgment for the defendants, and Matz

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. See FED. R. APP. P. 34(a)(2).

appeals. He argues that the court abused its discretion by denying his requests for appointed counsel and refusing to consider his evidentiary submissions at summary judgment. Because we conclude that the district court should have enlisted counsel, we vacate the judgment and remand for further proceedings.

On the basis of the allegations in the complaint, the district court allowed Matz to proceed on three claims, one of which was later dismissed for failure to exhaust administrative remedies and is not at issue on appeal. The remainder of the complaint, although cast by Matz to include distinct Eighth Amendment claims about the conditions in segregation and the medical treatment he received at Waupun, really presents a single contention: Matz alleges that he is seriously mentally ill and that the defendants not only failed to adequately treat his illness, but in fact exacerbated his condition by housing him in segregation under conditions inappropriate for the mentally ill. Matz explains that over the years he has been diagnosed with schizoaffective disorder, major depression, Tourette syndrome, intermittent explosive disorder, and borderline intellectual functioning. The defendants, he says, did not provide adequate treatment and, instead, aggravated the situation by isolating him in a segregation cell for 10 months during 2005 without sufficient sunlight, outdoor recreation, contact with other inmates, or visits except by video. And, Matz adds, the cell was lighted continuously, so he was deprived of sleep. As a consequence, Matz alleges, he attempted suicide several times while housed in segregation that year. The first time he intentionally overdosed on his psychiatric medications (which prompted the defendants to cut off the drugs altogether), and then the following month he used a shard of broken glass to cut himself. He received stitches, which he bit out the next day. Two weeks later he again cut his wrists with glass and needed stitches. A month after that Matz cut his throat with a razor and required hospitalization, and just weeks after his discharge from the hospital he swallowed pieces of plexiglass.

This description of events in 2005 parallels a claim Matz makes in a second lawsuit against some of the same defendants concerning an extended period of confinement in segregation at Waupun during 2007. That second suit, which Matz filed in the Western District of Wisconsin, describes further suicide attempts in 2007. See *Matz v. Frank*, No. 08-cv-491 (W.D. Wis. filed Sept. 2, 2008). Upon screening the later complaint, see 28 U.S.C. § 1915A, a magistrate judge in the Western District recruited counsel to assist Matz, and discovery is ongoing. In this action, in contrast, Matz was told after initial screening that his motion for appointment of counsel was being denied because he had contacted only two attorneys on his own. The district court instructed Matz to solicit three more attorneys.

The defendants meanwhile answered the complaint. Matz then filed a second motion for counsel. He said that he needed a lawyer because he is mentally ill and, after a recent transfer to a different facility, no longer was receiving help from the other inmates who prepared all of his legal submissions. Matz added that he needed counsel because he had "just recently attempted suicide by cutting both wrists with a razor blade." The district court again denied the motion, this time reasoning that Matz's complaint is "straightforward and uncomplicated." That characterization differs sharply from the view taken by the magistrate judge who enlisted counsel for Matz in his parallel suit: "I agree with petitioner that it would be very difficult for him to prosecute this case without the assistance of counsel. His claims involve complex questions of law and fact, which would be a challenge for even an experienced lawyer to navigate. This challenge would be nearly insurmountable for someone with significant mental health issues such as petitioner."

After discovery the defendants moved for summary judgment. They did not offer evidence suggesting that Matz's self-inflicted injuries were superficial or otherwise fell short of genuine attempts on his life. Nor did they submit evidence contradicting Matz's allegation that the standard conditions in segregation are not appropriate for the mentally ill and contributed to his suicide attempts. Instead, the defendants denied that Matz had been seriously mentally ill. One of the defendants, a prison psychologist, submitted an affidavit saying that Matz had entered Waupun with Antisocial Personality Disorder and a history of Tourette syndrome but was not afflicted with schizoaffective disorder, major depression, or intermittent explosive disorder when he was evaluated in February 2005. The defendant opined that Matz's "attempts at self harm" were manipulative efforts to get himself transferred to another prison. The defendants submitted evidence that Matz had been seen 31 times in segregation by staff from the Psychological Service Unit (a psychiatrist, a psychologist, a psychological associate, and a crisis intervention worker), and that the general medical staff treated his wounds promptly each time he inflicted more harm to himself. And as for the conditions in the segregation unit, the defendants insisted that their duty to Matz was satisfied by assuring that basic needs like food, water, and clothing were met.

While the defendants' motion for summary judgment was pending, a third request for counsel was filed on behalf of Matz by another inmate. The motion explains that Matz had recently been hospitalized for serious injuries and was presently "on an 'indefinite clinical status' as observation which means he cannot have paper or pens to prosecute this action." The motion also states that Matz had been placed on a "60 day rotation" requiring his transfer to a different facility every 60 days. The district court denied this motion because Matz had not signed it as required by Federal Rule of Civil Procedure 11(a). The court invited Matz to refile the motion after signing it, but he never did.

After that Matz responded to the motion for summary judgment with a stack of evidence. He included his own declaration attesting to the suicide attempts and the diagnoses of mental illness recounted in his complaint. He also included prison records documenting some of his injuries and submitted mental-health evaluations made by other prison doctors both before and after his 2005 confinement Waupun. Those evaluations give him a mental-health rating of 2, which the Wisconsin prison system uses to denote a "serious mental illness." In addition, Matz tried to offer proof of the conditions in segregation using affidavits supplied by other inmates, some of whom said they also suffered from mental illness that was exacerbated by confinement in segregation. And, last, Matz attached the defendants' responses to his requests for admissions. The defendants, though denying that Matz was seriously mentally ill, admitted that the conditions in the segregation unit "can exacerbate depression, suicidal and/or self injurious behavior for those inmates who are predisposed to decompensate in response to those conditions."

But Matz's response does not conform to Eastern District of Wisconsin Civil Local Rule 56.2, which requires that he identify by paragraph number the defendants' proposed findings of fact he was disputing, and also that he cite to evidentiary material establishing a dispute. The district court thus deemed admitted the defendants' proposed findings of fact and considered Matz's allegations only "[t]o the extent that the plaintiff's pleadings comply with Fed. R. Civ. P. 56(e) and present admissible evidence." The district court then granted summary judgment for the defendants. The court reasoned that, even if Matz had been seriously mentally ill while in segregation, the defendants' evidence established that they were not deliberately indifferent because Matz was "closely monitored by [psychological] staff and received frequent mental health treatments." The court also concluded that Matz had not shown that the conditions in his segregation cell were objectively substandard as, the court said, would be required for an Eighth Amendment violation.

On appeal Matz argues in part that the district court abused its discretion by disregarding his evidentiary submissions at summary judgment. Matz asserts that, as a pro se litigant, his proposed findings of fact and evidentiary submissions should have been accepted and considered.

District courts have discretion to strictly enforce their local rules even against pro se litigants, and if a district court has applied a local rule governing motions for summary judgment, we ordinarily would evaluate on appeal only the evidence taken into consideration by the district court. See *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006); *Cichon v. Exelon Generation Co.*, 401 F.3d 803, 809-10 (7th Cir. 2005). The district court here

looked to Matz's "pleadings" for admissible evidence, which could mean that the court looked at all of his submissions or might mean instead that only the complaint was taken into account. See FED. R. CIV. P. 7(a) (defining "pleadings" to include only complaints, answers, and a plaintiff's court-ordered reply to an answer); *Perry v. Sullivan*, 207 F.3d 379, 382 (7th Cir. 2000). We cannot say with certainty what the court examined. Matz, though, verified his complaint, and we may consider it to the extent that Matz's allegations are based on personal knowledge. See 28 U.S.C. § 1746; FED. R. CIV. P. 56(e); *Ford v. Wilson*, 90 F.3d 245, 246-47 (7th Cir. 1996). We review a grant of summary judgement de novo, construing all facts in Matz's favor. See *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008). Summary judgment is appropriate if the undisputed facts show that the defendants are entitled to judgment as a matter of law. See FED. R. CIV. P. 56(e); *Dale v. Potson*, 548 F.3d 563, 568-69 (7th Cir. 2008).

A serious mental illness, like any serious medical condition, requires treatment appropriate to the situation. See *Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001). If the defendants were aware of a serious mental illness, they had a duty to provide adequate care. See *Cavalieri v. Shepard*, 321 F.3d 616, 621-22 (7th Cir. 2003); *Hall v. Ryan*, 957 F.2d 402, 405-06 (7th Cir. 1992). The precise contours of the required care, however, depend on the circumstances of each case. And even a response that initially might have been appropriate can over time in changing circumstances constitute unreasonable care. *See Gil v. Reed*, 381 F.3d 649, 664 (7th Cir. 2004) (noting that response to medical need might be "so blatantly inappropriate as to evidence intentional mistreatment"); *Campbell v. Sikes*, 169 F.3d 1353, 1367 (11th Cir. 1999) ("Sikes's liability turns on whether he knew Plaintiff had bipolar disorder, or knew he was misdiagnosing Plaintiff, or knew his treatment was otherwise grossly inadequate but proceeded with the treatment anyway."). Or, on the other hand, the defendants may have taken all the precautions they could under the circumstances. See *Scarver v. Litscher*, 434 F.3d 972, 976-77 (7th Cir. 2006) ("Measures reasonably taken to protect inmates and staff from [plaintiff] may unavoidably aggravate his psychosis; in such a situation, the measures would not violate the Constitution.").

The district court followed the defendants' lead and minimized the undisputed seriousness of Matz's injuries. For example, the court recounted an incident in which Matz covered the window in the cell door with paper (which he did, he says, because staff had been ignoring his complaints about the presence of broken glass and feces in his cell). Prison staff put Matz on a "no paper" restriction and removed him from his cell to confiscate all of his paper. The district court failed to mention, however, that when Matz was returned to his cell, he managed to break the light and cut himself again. The court mentioned the injury only in saying that Matz, in a subsequent session with a psychologist, had "discussed his feelings of frustration with being in segregation and the fact that he cut

himself the prior week." The verified complaint, though, recounts that Matz "used the glass to lacerate his wrist, which required stitches," and pointed out that the cell was equipped with a surveillance camera. Additionally, the court's opinion does not mention the incident, also recounted in the verified complaint, when Matz cut his throat with a razor. Taken in the light most favorable to Matz, the undisputed evidence pointing to the severity of his self-inflicted injuries would seem to create a material issue about the legitimacy of the defendants' assessment that Matz was less than seriously mentally ill. The defendants did not try to dispute that these were attempts at suicide, which seems a far cry from their own description of Matz's behavior as "manipulative efforts" designed to effect a transfer.

But we need not decide whether the district court erred by granting summary judgment on the basis of the limited evidence it considered. That is so because Matz also argues that the district court abused its discretion by refusing to enlist counsel to assist him, and we agree with this contention. Matz asserts that he suffers from serious mental illness and also has a learning disability and functions at a borderline intellectual level. The prison medical records that were offered but excluded would seem to bear out his contention of mental illness. And this case, Matz contends, is neither factually simple nor legally straightforward, and he was at the mercy of assistance from other inmates in trying to prosecute the lawsuit. With a lawyer, he argues, he would have survived summary judgment.

We review the denial of a motion for counsel for abuse of discretion. *Greeno v. Daley*, 414 F.3d 645, 658 (7th Cir. 2005). We look to whether the district court applied the correct legal standard and reached a reasonable decision. *Pruitt v. Mote*, 503 F.3d 647, 658 (7th Cir. 2007) (en banc). Once the plaintiff has made a sufficient showing that he had attempted to procure counsel on his own, the district court must "consider *both* the difficulty of the case *and* the pro se plaintiff's competence to litigate it himself." *Id.* at 649. But if we find an abuse of discretion, we will reverse only upon a showing of prejudice. *Id.* at 654. Prejudice does not require that Matz demonstrate that he would have won his case with counsel, but instead that "there is a *reasonable likelihood* that the presence of counsel would have made a difference in the outcome of the litigation." *Id.* at 659.

Here, the district court did not have the benefit of *Pruitt* until Matz filed his third motion for counsel, and the court unfortunately applied an incorrect legal standard to the second motion. Putting aside our skepticism about the district court's characterization of this lawsuit as "straightforward and uncomplicated," the court failed to examine Matz's competency to litigate the claims and consequently abused its discretion. See *Pruitt*, 503 F.3d at 660. And there is reason to doubt Matz's competency. First, there is the excluded

evidence from prison doctors that contradicts the representations of these defendants that Matz did not suffer from a serious mental illness. And Matz submitted evidence to show that he has frequently been prohibited from possessing paper or pens (although he was allowed to use a crayon). It is also clear that he has received help with his filings, as evidenced by his affidavit and by the different handwritings on the filings. And given that he is reliant on other inmates, being on a "60-day rotation" obviously would have impaired the continuity of whatever assistance he was receiving. Therefore, our focus is on whether Matz has shown prejudice.

And we think that he has. Matz tried to introduce extensive, material evidence at summary judgment but was stymied by his failure to comply with local rules, and as a consequence the district court essentially accepted the defendants's proposed facts as true and disregarded the brunt of Matz's evidence. Matz's response to the defendants' motion included evidence of serious mental illness both before and after the events at issue in this case, and that evidence necessarily would have undercut the defendants' attempt to minimize the seriousness of his condition. The rejected submission also included evidence of his suicide attempts, which the district court did not mention in its order—the order's references to "attempts to harm himself" is a gross understatement of what Matz's evidence shows when viewed in a light favorable to him. The evidence would have established multiple instances in which Matz did not just "attempt" to harm himself, but actually *did* harm himself to the point of requiring hospitalization: overdosing on medication, cutting his arms, biting out stitches, cutting his wrists, cutting his throat, and swallowing plexiglass. And of course the rejected evidentiary submission also included the admission from the defendants that the conditions in the segregation unit "can exacerbate depression, suicidal and/or self injurious behavior for those inmates who are predisposed to decompensate in response to those conditions." If Matz had a minimally competent lawyer, the district court would have considered this evidence, and this evidence raises a disputed issue about whether the defendants' response was adequate in light of Matz's continued injuries.

Accordingly, we **VACATE** the judgment of the district court and **REMAND** for further proceedings, starting with the recruitment of counsel. For the sake of efficiency, we suggest that the district court ask counsel appointed in Matz's other lawsuit if they would be willing to accept this one as well. Moreover, in our view it would best conserve judicial resources for the two cases to be handled together, and so we urge the district court to consider transferring this case to the Western District of Wisconsin, where Matz's appointed lawyers have begun discovery in the other case.