In the

# United States Court of Appeals

## For the Seventh Circuit

No. 02-1390

WILLIAM G. PERKINS, JR.
and CONNIE PERKINS,

*Plaintiffs-Appellants*,

*v.*

JOHN L. LAWSON,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Indiana, Fort Wayne Division.
No. 1:99-CV-0525—**William C. Lee**, *Chief Judge.*

ARGUED OCTOBER 18, 2002—DECIDED DECEMBER 5, 2002

Before POSNER, DIANE P. WOOD, and EVANS, *Circuit Judges.*

EVANS, *Circuit Judge.* William Perkins, Jr. was beaten by another inmate while he was detained in the Grant County jail in Marion, Indiana. Ten days later he was suffering what turned out to be critical medical problems, which ultimately landed him on life support in an intensive care unit. He and his wife Connie filed the present lawsuit, pursuant to 42 U.S.C. § 1983 and Indiana negligence law, in the Grant County circuit court. They named a number of people as defendants, only one of whom remains in the case—former Sheriff John L. Lawson. The suit was removed to federal court, where ultimately summary judg-

ment was granted for Sheriff Lawson. This appeal involves a §1983 claim against the sheriff, in his official capacity only, for deliberate indifference to Perkins' serious medical needs and a claim for state law negligence for the failure to provide him with basic medical care.

On January 12, 1998, Perkins and another inmate got into a fight in the jail. The other inmate threw Perkins against a wall and then to the floor and began beating him. After the beating, Perkins was seen by Jerry Walters, a licensed practical nurse, who worked full time in the jail. Perkins appeared to her to be coherent. He was able to walk and talk without problems, and his eyes reacted equally to light. The next day, he was examined by Dr. James Oliver, who was not a jail employee, but rather a doctor on call to the jail. Also that day, Perkins was sent to Marion General Hospital for X rays, and doctors concluded that he was not seriously injured. Perkins was told to take Tylenol and he was given an eye solution. He was also placed in a cell by himself.

Additionally, Nurse Walters saw Perkins on other days, and in response to a request by Perkins, Dr. Oliver saw him on the 20th and again on the 22nd. On January 23, Perkins sent Walters a medical request, which read:

> I think that you think I'm joking well I'm not I need serious medical attention my body is slowly drying up from lack of fluids and food I can't even swallow my own saliva that pretty bad if I lay here three more days without water or fluids because I can not swallow them what might happen I believe I need a I.V. I will not last three days I get choked on water.

Below his signature was the notation, "still vomiting and cannot eat or drink anything." Nurse Walters notified Dr. Oliver, and the same day, Perkins was taken back to the hospital. Nurse Walters told the deputy sheriff transporting Perkins to the hospital how concerned she

was about him. But, at the hospital, Dr. Doug Phillips concluded that Perkins was not in a medical emergency and that he was not dehydrated. In fact, Dr. Phillips found nothing significantly wrong with him. The report Dr. Phillips sent back to the jail said that Perkins should continue to use Tylenol and that he should return to the emergency room if his symptoms changed. Perkins was taken back to the jail.

Nurse Walters did not see Perkins when he returned, but she called the jail to see what had happened to him at the hospital. When she was told the hospital sent him back to the jail, she said, "You're kidding." Perkins was placed in an isolation cell through the weekend. During that time, he did not eat nor drink anything.

On the afternoon of January 26th he was released from the hospital on his own recognizance, probably because of his condition—though the record does not make this clear. Connie Perkins took him straight to Marion General Hospital, from which he was transported by ambulance to Lutheran Hospital in Fort Wayne, where he was placed on life support in the intensive care unit. He was in critical condition with a neurological problem.

For purposes of the § 1983 claim, the sheriff's role in all of this is what we must be concerned with. On the 21st Connie Perkins called Sheriff Lawson, who was not available, but at 7:30 that evening he called her at her home. She told him that Perkins was in great pain, could not eat or drink, was vomiting, and could not walk or stand. She said no one at the jail was doing anything about it. The sheriff told her he would check on him. The next day, the sheriff called Connie Perkins again to say that the doctor "has seen Bill and he is okay." The sheriff also said he had sent someone to talk to Perkins and that he had ordered him moved to a separate cell so they could keep an eye on him. Connie Perkins also called four guards

to inform them about her husband's condition. She was told he was doing fine. Because it became clear that Perkins had not been doing fine, this lawsuit was filed.

The district court granted summary judgment dismissing the case on the merits. We review *de novo* the grant of summary judgment and construe the record and all reasonable inferences drawn from it in the light most favorable to the nonmoving party. *Del Raso v. United States*, 244 F.3d 567 (7th Cir. 2001). Summary judgment is appropriate when the moving party demonstrates the absence of a genuine issue of material fact for trial and that he is entitled to judgment as a matter of law.

Perkins was in the jail because of a probation violation, so this is an Eighth Amendment claim against Sheriff Lawson, who is sued in his official capacity only. That the sheriff is sued in his official capacity creates problems for the plaintiffs. Under § 1983, there is no respondeat superior liability. In order to prevail on an official capacity suit against the sheriff, the plaintiffs must show that an official policy or custom caused the injury. *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988). They must point to either an express policy which caused the injury, a widespread practice that is so well-settled as to amount to a policy, or that the sheriff had the final policymaking authority for the decisions regarding the medical treatment Perkins received. *Abbott v. Village of Winthrop Harbor*, 205 F.3d 976 (7th Cir. 2000). Although the jail had written policies and procedures for dealing with the medical needs of inmates, Perkins does not assert that any of the policies or procedures caused the harm that he suffered. He does not claim that as a policymaker the sheriff made a decision regarding the sort of treatment Perkins would receive.

What he does claim is that various guards did not take seriously enough the condition he was in. But those guards

are not defendants, and the sheriff cannot be held liable under § 1983, on a respondeat superior theory, for their actions.

More fundamentally, though, even without the respondeat superior problem, there is no showing that anyone at the jail was deliberately indifferent to Perkins's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97 (1976). To prevail on his claim, Perkins would need to show that his medical needs were "objectively, sufficiently serious" and that the prison official was deliberately indifferent to those needs. *Farmer v. Brennon*, 511 U.S. 825 (1994). To show deliberate indifference, he must establish that the jail official "was subjectively aware of the prisoner's serious medical needs and disregarded an excessive risk that a lack of treatment posed" to his health. *Wynn v. Southward*, 251 F.3d 588 (7th Cir. 2001). Negligence or even gross negligence does not constitute deliberate indifference. *Washington v. LaPorte County Sheriff's Dep't*, 306 F.3d 515 (7th Cir. 2002); *Snipes v. DeTella*, 95 F.3d 586 (7th Cir. 1996).

The jail officials in this case took steps to obtain treatment for Perkins. Nurse Walters sent him to the hospital, where twice he was found not to be in serious distress, a finding which seems to be in error. But the fact that jail officials relied on the opinion of the doctors militates against a finding of deliberate indifference on the part of any jail personnel, and especially the sheriff, who was not in actual contact with Perkins. Even if it could be that the guards who saw Perkins during the weekend, when his condition seemed to deteriorate, showed deliberate indifference, as we said that is not relevant to the § 1983 suit against the sheriff. The § 1983 claim was properly dismissed.

The state law negligence claim presents different issues. Respondeat superior liability exists in Indiana tort law. It

"creates liability for a principal where it would otherwise not exist." *Interim Healthcare of Fort Wayne, Inc. v. Moyer*, 746 N.E.2d 429, 431 (Ind. App. 2001). Given the availability of respondeat superior liability, we are not convinced that, as a matter of law, there can be no finding of negligence in this case. Under Indiana law, to show negligence Perkins must show a duty to conform one's conduct to a standard of care arising from the relationship with Perkins, a failure to conform one's conduct to the standard of care required, and an injury caused by the failure. *Trout v. Buie*, 653 N.E.2d 1002 (Ind. App. 1995). This is far less than Perkins must show to establish deliberate indifference under § 1983. Furthermore, in Indiana, summary judgment is generally seen to be inappropriate in negligence actions. *Barsz v. Max Shapiro, Inc.*, 600 N.E.2d 151 (Ind. App. 1992). For these reasons, we think the better course of action regarding the state law claim would be to remand the case to the state court. We therefore AFFIRM the dismissal of the § 1983 claim but VACATE that part of the grant of summary judgment on the state law negligence claim and REMAND this case to the district court with instructions to REMAND the state law claim to the circuit court for Grant County, Indiana. Each side shall bear its own costs.

A true Copy:

     Teste:

 

               _____
               *Clerk of the United States Court of*
               *Appeals for the Seventh Circuit*