James L. REYNOLDS, Plaintiff–Appellant,

v.

Lisa BARNES, et al., Defendants–Appellees.

No. 03–1108.

United States Court of Appeals, Seventh Circuit.

Submitted Dec. 16, 2003.[*]

Decided Dec. 18, 2003.

---

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

James L. Reynolds, pro se, Greencastle, IN, for Plaintiff–Appellant.

Douglas J. Masson, Hoffman, Luhman & Masson, Lafayette, IN, for Defendant–Appellee.

Before POSNER, ROVNER, and EVANS, Circuit Judges.

**ORDER**

James Reynolds' foot was broken when he was arrested by the Lafayette police, but he did not receive crutches or prescription pain medication until four days and three medical visits later. Reynolds brought this suit under 42 U.S.C. § 1983 against three guards at the Tippecanoe County Jail, Lisa Barnes, Darcey Turner, and Mike Huddleston, claiming that they were deliberately indifferent to his medical needs in violation of the Eighth Amendment. The district court granted the guards' motion for summary judgment because they lacked the requisite mental state for deliberate indifference. Reynolds appeals, and we affirm.

We construe the record, and all reasonable inferences drawn from it, in the light most favorable to Reynolds, the non-moving party. *Perkins v. Lawson,* 312 F.3d 872, 875 (7th Cir.2002). On October 28, 2000, Reynolds sustained an acute fracture to his fourth and fifth left metatarsal during his arrest on charges of public intoxication and disorderly conduct. He was taken to the hospital, where a doctor treated contusions to his chest and head, but did not note any problems with his left foot. That evening he was released to the custody of the Tippecanoe County Jail.

The next day, Reynolds submitted a medical complaint card stating "Head is bleeding, my foot is broke. I have staples in my head and they hurt." The day after that, he was visited by a nurse, who noted swelling to his left foot and gave him an ice pack and ibuprofen. Reynolds states in an affidavit that he did not return to the hospital until four days after his arrest, on November 1 (although his medical records place this visit on October 31). During that visit, an emergency room physician gave Reynolds a splint and crutches and prescribed pain medication. Beginning the next week, Reynolds consulted with an orthopedist, who monitored his pain medication and ability to bear weight.

According to his affidavits, Reynolds received little assistance from the jail guards during the period after his arrest. He told

the guards that he had a broken foot, but on his first day in the jail they forced him to walk on it when his unit went to recreation. To do this, Reynolds had to "hop on one foot and hold on to things." Reynolds filled out medical complaint cards, but the guards simply laughed and threw them away. Reynolds says he had to "cry" and "beg" just to get the nurse to give him non-prescription pain reliever.

The district court concluded that Reynolds could not prove that the prison guards were deliberately indifferent, and granted them summary judgment. The court noted that neither a doctor on the first day nor a nurse on the third day diagnosed a broken foot, and thus "no reasonable juror could conclude that the three defendant guards had actual knowledge of the broken foot even though Mr. Reynolds alleges that he complained constantly." We review *de novo* the grant of summary judgment. *Perkins*, 312 F.3d at 875. Summary judgment is appropriate where the moving party demonstrates the absence of a genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. *Id.*

On appeal, Reynolds takes issue with the district court's ruling, renewing his contention that the guards' deliberate indifference was reflected by their delay in getting him treatment, their cavalier attitude towards his pain, and their cruelty in forcing him to walk to recreation on a broken foot.

The Eighth Amendment protects prisoners from deliberate indifference to a serious injury or medical need. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The Due Process Clause of the Fourteenth Amendment extends that right to pre-trial detainees such as Reynolds. *Palmer v. Marion County*, 327 F.3d 588, 592 (7th Cir.2003). To establish deliberate indifference, a plaintiff must show that he suffered from an objectively serious medical condition, and that prison officials subjectively knew of and disregarded his needs. *Perkins*, 312 F.3d at 875. Negligence or even gross negligence on the part of officials is not sufficient for liability; their actions must be intentional or criminally reckless. *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

Although Reynolds' broken foot constitutes an objectively serious medical condition, Reynolds cannot establish that the guards acted with deliberate indifference. The guards responded to Reynolds' needs in a timely fashion, referring him to a nurse the day after he first complained to them about his foot. Although Reynolds might have preferred to go to a hospital immediately, the Constitution does not mandate that a prisoner receive exactly the medical treatment he desires. *See Higgins v. Corr. Med. Serv. of Ill., Inc.*, 178 F.3d 508, 513 (7th Cir.1999). Similarly, although Reynolds complains that the guards made him walk on a foot he told them was broken, there is no evidence that the guards disregarded an excessive risk to his health, given the range of medical information available to them at the time. *See Chapman v. Keltner*, 241 F.3d 842, 846 (7th Cir.2001). And while it is true that a delay in necessary treatment can establish deliberate indifference, "verifying medical evidence" must exist to show how the delay adversely affected a patient's condition, *Langston v. Peters*, 100 F.3d 1235, 1240–41 (7th Cir.1996), and Reynolds has made no such showing.

Accordingly, we AFFIRM the judgment of the district court.