UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 9, 2005[*]
Decided June 10, 2005

**Before**

Hon. RICHARD A. POSNER, *Circuit Judge*

Hon. JOHN L. COFFEY, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 04-2271

| | |
|---|---|
| CALVIN A. PICKETT, JR., <br>     *Plaintiff-Appellant*, <br><br>     *v.* <br><br> JUDSON CHILDS, Asst. Warden, <br> et al., <br>     *Defendants-Appellees*. | Appeal from the United States <br> District Court for the Southern <br> District of Illinois <br><br> No. 00-429-CJP <br><br> Clifford J. Proud, <br> *Magistrate Judge*. |

**O R D E R**

Illinois inmate Calvin Pickett filed suit under 42 U.S.C. § 1983, claiming that his Eighth Amendment rights were violated when he was denied adequate medical care after a fall in his cell. He named 11 defendants who to varying degrees were responsible for his treatment. The district court dismissed two of the defendants and granted summary judgment to the rest. Pickett now appeals the grant of summary judgment to four of the defendants: the prison warden, two assistant wardens, and the guard who responded to Pickett's call for aid on the night he was injured. We affirm the judgment of the district court.

---

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

The defendants, for the most part, do not remember but do not dispute the facts Pickett alleges.  In August 1998, while incarcerated at Shawnee Correctional Center, Pickett slipped on the cell floor and reinjured his right knee.  Pickett's calls for help were answered by prison guard and defendant David Nance, who promised to call for a nurse.  Thirty minutes later, a nurse arrived on the floor but did not stop at Pickett's cell, so he and his cellmate summoned Nance again.  Nance soon returned and told Pickett that he had called the nurse, which was all that he could do, and that he was busy because he was "running showers" while the prison was on lockdown.  Thereafter, Nance ignored Pickett's calls.  A few hours later another guard arranged for someone to take Pickett in a wheelchair to the Health Care Unit to be examined.  According to Pickett, this second guard also "agreed" that Nance should have seen to it that he received help earlier.

The nurse who saw Pickett at the Health Care Unit that night gave him an Ace bandage, ice, and pain medication, and told him that he would be able to see a doctor in a few days.  She also told him that his knee would be x-rayed.  However, when he saw a doctor three days later, the doctor determined that an x-ray was unnecessary and refused to authorize one.  In October 1998 he was examined by an orthopedic consultant, who recommended an MRI scan for his right knee.  The prison medical director approved the recommendation, but the procedure was disallowed by the company that subcontracted diagnostic services for the prison.

Dissatisfied with his treatment, Pickett filed grievances and complained personally to the wardens that prison medical staff had inappropriately denied him the x-ray and MRI, and several times they had refused to examine him, explain their diagnoses, or provide more pain medication when he needed it.  He also claimed that they exacerbated his injury by refusing to accommodate him with a cane, crutches, or a wheelchair, and that other staff members had unreasonably denied his requests to be moved to a lower bunk or to housing closer to the dining hall.  Pickett states that the wardens promised to look into some of these things, but ultimately did nothing but refer him back to the medical staff.  Moreover, he alleged that the wardens' own actions exhibited a deliberate disregard for his suffering and the risk of further injury.  On one occasion, two of them stood watching him "hobble" back to housing from the infirmary but did nothing to assist.  And one of them—Pickett does not know which— ordered him placed in segregation for nine days for refusing to leave the Health Care Unit after his appointment was cancelled and the doctor refused to see him or to give him more pain medication.

In December 1998 Pickett finally received his x-ray, which showed that he had scoliosis of the lumbar spine.  He sought unsuccessfully to persuade the wardens that he needed hospitalization.  Then in April 1999 Pickett was transferred to East Moline Correctional Center, where he eventually had an MRI that indicated a strain in his anterior cruciate ligament and a possible tear in his

medial meniscus.

Pickett brought his original suit in June 2000 and later amended his complaint to include the current appellees and two other parties as additional defendants. He alleged that the three wardens and the prison guard were deliberately indifferent to his medical needs because they failed to provide him with adequate medical attention. In April 2004 the district court granted summary judgment to these defendants, explaining that Pickett had no right to a particular course of treatment and that the defendants acted reasonably under the circumstances.

On appeal, Pickett asserts essentially the same arguments he raised in the district court. The test for an Eighth Amendment claim in denial-of-medical-care cases such as this one is whether the defendant has shown "deliberate indifference to a prisoner's serious illness or injury." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *see Gil v. Reed*, 381 F.3d 649, 661 (7th Cir. 2004). The defendants do not dispute that Pickett had a serious injury, so we focus on the deliberate indifference part of the test. A prison official is deliberately indifferent if he is aware that an inmate is facing a substantial risk of harm and fails to take reasonable steps to prevent it. *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *Velez v. Johnson*, 395 F.3d 732, 735 (7th Cir. 2005).

Pickett cannot show that any of the four defendants acted unreasonably. *See Farmer*, 511 U.S. at 845 ("prison officials who act reasonably cannot be found liable" for violating the Eighth Amendment); *Peate v. McCann*, 294 F.3d 879, 882 (7th Cir. 2002). Pickett asserts that Nance "interfered and/or hindered prompt medical attention," but he points to no evidence in support of this claim. The facts in the record do not even support an inference that Nance *facilitated* excessive delay. Delaying an inmate's access to medical care may establish deliberate indifference, *see Estelle*, 429 U.S. at 105-06; *Gil*, 381 F.3d at 662, but Pickett's own testimony suggests that Nance alerted medical staff soon after being summoned. And before he began to ignore Pickett's pleas, Nance responded twice with explanations and assurances.

A delay must cause harm to give rise to liability. *Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996). Pickett contends neither that his pain was intolerable, nor that the delay caused an appreciable worsening of his condition. And in any case, we would require some kind of substantiation of such claims. *Id.* Moreover, Nance acted reasonably because he was entitled to rely on the prison medical staff to establish and manage priorities in dispensing care. *See Perkins v. Lawson*, 312 F.3d 872, 875 (7th Cir. 2002); *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 262 (7th Cir. 1996).

For similar reasons, we uphold the judgment of the district court as to the three wardens.  To the extent Pickett means to challenge the district court's holding that there is no vicarious liability under § 1983, his argument is a non-starter. *Perkins*, 312 F.3d at 875.  But even if he is understood to suggest that the wardens are liable because the violation of his rights was obvious and they did nothing—a question the district court did not directly address—he must lose.  This case is distinguishable from those in which we have held communications from an inmate adequate to put administrators on notice of violations, *see Reed v. McBride*, 178 F.3d 849, 854 (7th Cir. 1999); *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996), because all of Pickett's alleged violations, including those involving decisions formally in the hands of non-medical authorities, were premised on medical judgments.  Prison administrators may rely on medical staff except where it is obvious that the staff is failing to exercise its medical judgment.  *See Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004).  No such failure is obvious here.  Therefore, the wardens' refusal to take "corrective actions" in response to Pickett's complaints was reasonable as a matter of law.  *See Cuoco v. Moritsugu*, 222 F.3d 99, 111 (2d Cir. 2000).

The decision of the district court is AFFIRMED.