NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 12, 2008[*]
Decided March 13, 2008

**Before**

WILLIAM J. BAUER, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

No. 06-3922

| | |
|---|---|
| JAMES E. MCROY, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Northern District of Illinois, Eastern Division. |
| *v.* | |
| | No. 03 C 4718 |
| ARAMARK CORRECTIONAL SERVICES, INC. and THOMAS J. DART, | Geraldine Soat Brown, |
| *Defendants-Appellees.* | *Magistrate Judge.* |

## O R D E R

Illinois detainee James McRoy, who is in pretrial detention at the Cook County jail, brought this lawsuit under 42 U.S.C. § 1983, claiming that Sheriff Thomas Dart and Aramark Correctional Services, Inc., which prepares the detainees' meals, violated his civil rights when they served him undercooked chicken, spoiled meat, and spoiled milk. He also brought claims against Aramark under Illinois law for personal injury and breach of the

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2).

implied warranty of merchantability. The magistrate judge granted Dart's and Aramark's motions for summary judgment on the civil rights claim and declined to exercise supplemental jurisdiction over the state-law claims. We affirm.

Unless otherwise noted, the following facts are undisputed. In 2003 McRoy was served undercooked chicken that was "bloody." He complained to a guard, and his meal was replaced. He filed a grievance, which was routed to Aramark. Aramark's dietician investigated and learned that some chicken served at that meal had been cooked improperly; so Aramark retrained its staff on the proper technique for cooking chicken. There is no evidence in the record that McRoy or any other inmate complained about undercooked chicken again.

McRoy also filed grievances complaining that between March 2003 and April 2004 he was served six cartons of spoiled milk and three sandwiches containing spoiled meat. He concluded that the meat and milk were spoiled because, he reported, they smelled "sour" and tasted "terrible." Although Aramark gave McRoy replacement sandwiches and milk on request when replacements were available, Aramark and Dart dispute that McRoy was served spoiled milk or meat. None of the milk McRoy received was served after the expiration date stamped on the carton, and Aramark explained to McRoy that some sandwich meat is processed using garlic and other spices that have an aroma, which is not a sign of spoilage.

McRoy testified at his deposition that he consumed some of each portion of undercooked chicken and spoiled meat and milk, and that each time he became ill, experiencing upset stomach, diarrhea, vomiting, hemorrhoids, blood in his stool, swollen hands and feet, boils, and problems urinating. McRoy received over-the-counter medication to relieve his symptoms when he requested it. He did not seek further medical attention, and therefore he was never tested for food poisoning. A doctor at the jail testified that consuming spoiled meat and milk and undercooked chicken could cause some of the ailments McRoy cited, but added that McRoy was taking medications that cause side effects similar to these symptoms. He also pointed out that, during the time McRoy says he was served tainted food and milk, there were no instances of food poisoning reported in McRoy's division of the jail.

Aramark coordinates the ordering, delivery, and preparation of the food at the jail. It is undisputed that Aramark complies with federal, county, and municipal public heath guidelines and is certified annually to maintain a food service license. Aramark's employees routinely check the expiration dates on milk cartons, the packaging dates on meat, and the temperature of the coolers. Aramark disposes of any milk that has expired and meat that is old. Although a cooler in McRoy's division once was found to be too

warm, the problem was fixed, and there is no evidence that any of the food and milk McRoy was served came from this cooler.

Correctional officers oversee the delivery of individual meals to the detainees. There is no policy outlining how soon the officers must serve food after it has arrived from the kitchen. McRoy testified that he has seen milk "sitting out" for "periods of time" before it is served and that sometimes meals are served to some detainees hours after they are delivered to the living areas.

After McRoy filed his complaint, the parties consented to proceed before a magistrate judge, and Aramark and Dart moved for summary judgment. The magistrate judge concluded that McRoy did not present sufficient evidence that his food and milk were spoiled or that they made him sick. She also determined that McRoy could not show that Aramark and Dart acted with deliberate indifference because the evidence established that they followed food safety guidelines and responded reasonably to McRoy's complaints. The magistrate judge then noted that McRoy had presented no evidence that the jail had a policy or practice that caused food or milk to spoil; so his claim against Dart based on a theory of municipal liability failed. Finally the magistrate judge declined to exercise supplemental jurisdiction over McRoy's state-law claims.

We review de novo the magistrate judge's grant of summary judgment, viewing all facts and drawing all reasonable inferences in the light most favorable to McRoy, the non-moving party. *See Williams v. Rodriguez*, 509 F.3d 392, 398 (7th Cir. 2007). Summary judgment is appropriate only when there are no material facts in dispute, and we bear in mind that we cannot weigh conflicting evidence or decide which version of the facts is more credible. *See Payne v. Pauley*, 337 F.3d 767, 771 (7th Cir. 2003). Although the Eighth Amendment protects only convicted prisoners from cruel and unusual punishment, the same standard applies to pretrial detainees under the due-process clause of the Fourteenth Amendment. *See Williams*, 509 F.3d at 401. For McRoy to succeed on his claim, he must establish both objective and subjective components. First he must show that the preparation of his meals denied him "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see Gillis v. Litscher*, 468 F.3d 488, 491 (7th Cir. 2006). Second he must establish that Aramark and his jailers acted with deliberate indifference, that is, they were aware of and disregarded an excessive risk to his health. *See Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *Sain v. Wood*, 512 F.3d 886, 894 (7th Cir. 2008).

McRoy argues on appeal that the magistrate judge erred in granting summary judgment because, he insists, there were triable issues of fact as to whether Aramark's and the jail's food and milk storage and preparation procedures posed a serious danger to his

health and whether Aramark and jail officials were deliberately indifferent when they continued to serve him spoiled meat and milk despite his complaints.

Detainees have a right to "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to [their] health and well being." *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985) (internal quotation marks and citation omitted). In response to the summary-judgment motion, McRoy offered both the testimony of a jail doctor that, in certain circumstances, ingesting undercooked and spoiled food and milk can cause severe illness, and also offered his own testimony that he consumed "bloody" chicken and meat and milk that smelled "sour" and tasted "terrible" and that he became sick soon afterward. It is a close question as to whether this evidence is enough to raise a triable issue on whether the food and milk exposed him to an "objectively serious" danger, *Hall v. Bennett*, 379 F.3d 462, 464 (7th Cir. 2004), but we need not decide the issue because we agree with the magistrate judge that McRoy did not come forward with evidence that Aramark or jail officials knew of and disregarded an excessive risk to his health. *See Farmer*, 511 U.S. at 847; *Hall*, 379 F.3d at 464. To the contrary, the evidence showed that Aramark followed procedures to ensure that the food and milk it served were safe, including frequently checking the temperature of the coolers and discarding expired milk and old meat. Furthermore, each time McRoy complained about unsafe food, jail officials and Aramark took steps to remedy the problem. When Aramark learned that McRoy received undercooked chicken, it replaced his meal and retrained the kitchen staff, and when McRoy complained to guards and requested replacements for spoiled meat or milk, the guards notified Aramark, which gave him a replacement if it was available. Because Aramark and jail officials responded reasonably to the risk that tainted food and milk could harm McRoy, they were not deliberately indifferent. *See Farmer*, 511 U.S. at 847; *Peate v. McCann*, 294 F.3d 879, 882 (7th Cir. 2002).

McRoy next argues that his claim against Dart should go forward because, he insists, he submitted enough evidence to show that the jail had a widespread practice of mishandling food and drink that violated his civil rights. *See Perkins v. Lawson*, 312 F.3d 872, 875 (7th Cir. 2002). But because McRoy cannot show that his civil rights were violated, the district court properly granted summary judgment in favor of Dart. *See id.*

Finally, McRoy argues that his trial counsel was ineffective because, he contends, counsel declined to investigate the allegations in the complaint, did not engage in adequate discovery, and failed to name an additional defendant. But as we have said repeatedly, the Sixth Amendment does not provide civil litigants with the right to effective assistance of counsel; if counsel's performance was deficient, McRoy's remedy lies in a malpractice action under state law. *See Stanciel v. Gramley*, 267 F.3d 575, 581 (7th Cir. 2001).

AFFIRMED.