COLEMAN, District Judge.
Jessie Miller committed suicide while incarcerated at the Columbia Correctional Institute (“CCI”). Miller’s minor siblings brought this action under 42 U.S.C. § 1983, claiming that Miller committed suicide after several staff members at CCI acted with deliberate indifference to Miller’s serious medical condition involving a long history of suicide attempts, self-harm, and mental illness. The district court granted qualified immunity to the management level defendants, the Wisconsin Resource Center (‘WRC”) defendants, and the nurse who was called after Miller had committed suicide. The remaining defendants[1], including CCI staff members, Jennifer/Janel Nickel[2], Ryan Tobiasz, Lieutenant Boodry, Captain M. *988 Johnson, Sergeant Severson, Officer Millard, Officer Herbrand, Officer Bath, and Officer Quade, seek interlocutory appeal from the district court’s denial of qualified immunity. We affirm.
I. Background
The CCI defendants are allowed to bring this interlocutory appeal now because they are raising the question of whether they should have been dismissed based on the defense of qualified immunity. See Mitchell v. Forsyth, 472 U.S. 511, 525-26, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). The issue of qualified immunity is “immunity from suit rather than a mere defense to liability,” and thus we must determine its application as early in the proceedings as possible. Saucier v. Katz, 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (emphasis in original). The facts below are presented in the light most favorable to Miller.
Jessie Miller had suffered from mental health issues since the age of five. Over the years, Miller engaged in various types of self-harm and attempted suicide on several occasions. His mental health issues, self-harm and suicidal ideation were well documented. During his incarceration, Miller attempted suicide at Dane County Jail on November 10, 2007, and then again at Dodge Correctional Institute on June 4, 2008. Miller was transferred to WRC due to his suicide attempts. While at WRC, Miller continued to harm himself by swallowing razor blades and other sharp objects and banging his head against the walls. At some point, he stated that he would commit suicide if returned to a Wisconsin Department of Corrections facility. Three days after being transferred to CCI on June 19, 2009, Miller committed suicide by hanging himself with a bedsheet. He was twenty-two years old.
Miller’s minor siblings filed the instant lawsuit on Miller’s behalf alleging violation of Miller’s Eighth Amendment rights based on defendants’ deliberate indifference to Miller’s serious medical condition (his mental illness and suicide risk). After obviously careful consideration in a lengthy memorandum opinion and order, the District Court granted qualified immunity dismissal to seventeen of the approximately twenty-six defendants, including the management level defendants, WRC defendants and the nurse who was called after Miller had committed suicide. The appellants are CCI staff including the intake nurse (Nickel), the psychology associate (Tobiasz), and several prison guards that were on duty the night Miller committed suicide (Bath, Boodry, Herbrand, Johnson, Millard, Quade and Severson).
II. Discussion
A complaint must be dismissed if the allegations do not state a plausible claim. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). “The Court explained in Iqbal that ‘the plausibility standard is not akin to a “probability requirement,” but it asks for more than a sheer possibility that a defendant has acted unlawfully.’ ” Atkins v. City of Chicago, 631 F.3d 823, 831 (7th Cir.2011) (quoting Iqbal, 129 S.Ct. at 1949). As this Court recently explained in Atkins, “the fact that the allegations undergirding a plaintiffs claim could be true is no longer enough to save it.” Atkins, 631 F.3d at 831. Thus, after Twombly and Iqbal, a plaintiff must plead facts that suggest a right to relief beyond the speculative level. Id. at 832.
Qualified immunity protects government officials from individual liability for actions taken while performing discretionary functions, unless their conduct violates clearly established statutory or con *989 stitutional rights of which a reasonable person would have known. See Brokaw v. Mercer County, 235 F.3d 1000, 1022 (7th Cir.2000). Thus, in order to determine whether a prison official is entitled to qualified immunity the Court has two tasks. First, taking the facts in the light most favorable to the plaintiff, we must determine whether a constitutional right was violated. Second, if the factual allegations demonstrate a constitutional violation, we then decide whether the right in question was clearly established at the time of the occurrence. Cavalieri v. Shepard, 321 F.3d 616, 620 (7th Cir.2003) (citing Saucier v. Katz, 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). We review these issues de novo. Jacobs v. City of Chicago, 215 F.3d 758, 765 (7th Cir.2000).
We therefore begin by examining whether the plaintiffs have alleged facts sufficient to plausibly support the claim that the CCI defendants’ conduct violated Miller’s constitutional rights. The same standard applies for pretrial detainees and incarcerated individuals, though pursuant to the Fourteenth Amendment rather than the Eighth Amendment. See Payne v. Churchich, 161 F.3d 1030, 1039-41 (7th Cir.1998). The seminal case describing constitutional violations under the Eighth Amendment is Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). In Farmer, the Supreme Court held that prison officials have a duty to “ensure that inmates receive adequate food, clothing, shelter, and medical care.” Id. To determine whether an inmate’s Eighth Amendment rights were violated by a deprivation, we examine the alleged violation both objectively and subjectively. “First, the deprivation alleged must be objectively, sufficiently serious.” Sanville v. McCaughtry, 266 F.3d 724, 733 (7th Cir.2001) (quoting Farmer, 511 U.S. at 832, 114 S.Ct. 1970). “Second, the mental state of the prison official must have been ‘one of deliberate indifference to inmate health or safety.’ ” Id.
In order to satisfy the first element, when a claim is based upon the failure to prevent harm, the plaintiff must show that the inmate was “incarcerated under conditions posing a substantial risk of serious harm.” Id. This Court has stated in numerous cases that, “suicide is a serious harm.” See, e.g., Estate of Cole v. Fromm, 94 F.3d 254, 261 (7th Cir.1996); see also Estate of Novack ex rel. Turbin v. County of Wood, 226 F.3d 525, 529 (7th Cir.2000); Hall v. Ryan, 957 F.2d 402, 406 (7th Cir.1992). Under the second prong, “deliberate indifference”, “a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.” Sanville, 266 F.3d at 734 (quoting Farmer, 511 U.S. at 837, 114 S.Ct. 1970).
The question for us is whether, when viewing all well-pleaded allegations in the complaint and construing all reasonable inferences in the light most favorable to Miller, it is plausible that each of the defendants-appellants were subjectively aware of Miller’s serious medical condition (i.e., that he was a suicide risk) and either knowingly or recklessly disregarded it. If the answer to that question is yes, then plaintiff has adequately pleaded a constitutional violation and we ask whether the right was clearly established at the time of the incident.
The defendants-appellants are in different positions in terms of what they knew of Miller: Defendant Nickel, a registered nurse at CCI, reviewed Miller’s chart upon his arrival from WRC, conducted the *990 transfer screening, referred him to the Psychological Services Unit (“PSU”) and checked “Yes” on the transfer form indicating that Miller was on psychological medications; Defendant Tobiasz, a psychological associate in the PSU at CCI, personally met with Miller after a referral from Nickel to determine whether he should be placed in Disciplinary Segregation or within CCI’s Special Management Unit (“SMU”); Bath, Boodry, Herbrand, Johnson, Millard, Quade, Severson were the prison security staff on duty the day of Miller’s suicide. Millard made rounds in the SMU at 11:00 p.m. on the night in question and saw Miller on the floor of his cell but that nothing appeared amiss. Severson found Miller on the floor with no pulse and a ligature around his neck at 11:58 p.m. Quade arrived next, called the control booth, and asked why no alarm had sounded. Bath arrived to see Miller lying on his back with white cloth around his neck and ran to the control booth to get a rescue knife. Boodry directed Bath to return to the control booth and get a shield before entering Miller’s cell.
The first prong of the qualified immunity analysis requires the Court to determine whether plaintiff adequately pleaded a constitutional violation against each defendant. It is plausible that both Nickel and Tobiasz had actual knowledge that Miller was a suicide risk. Nickel reviewed Miller’s file that indisputably contained his history of self-harm and suicide attempts. While Tobiasz did not review Miller’s file, he met with Miller and was aware of his history of self-harm and chose to place him in the SMU. Both the Supreme Court and the Seventh Circuit have held that “[i]f the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus ‘must have known’ about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant official had actual knowledge of the risk.” Sanville, 266 F.3d at 737 (quoting Farmer, 511 U.S. at 842, 114 S.Ct. 1970). Thus, with respect to Nickel and Tobiasz this Court should proceed to determine whether they took reasonable steps to prevent the harm.
The complaint alleges that the security officers knew or should have known of Miller’s mental illness and suicide attempts because he was adjudicated mentally ill, had court-ordered medications which he refused to take at 8:30 p.m. the night he died, and he had a well documented history of suicidal behavior. These allegations along with the fact that Miller was housed in the SMU, where inmates in need of greater supervision are placed, support the reasonable inference that the security officers were exposed to information concerning Miller’s suicide risk. While discovery may prove otherwise, their knowledge of the risk can reasonably be inferred at this very early stage of the litigation.
The next part of the deliberate indifference analysis for determining whether plaintiff adequately pleaded a constitutional violation is whether the defendants took reasonable steps to prevent the harm. Plaintiff alleges that Nickel took no action to assure Miller’s safety, but also alleges that she referred Miller to the PSU, noted that he should be on psychiatric medication and denied access to “incapacitating agents.” Thus, according to the allegations in the complaint, Nickel did take some action. It is unclear what more Nickel had the authority to do. While she maybe could have communicated Miller’s condition better, that is perhaps only negligence and even gross negligence does not state a claim for deliberate indifference. Yet, at the same time viewing the allegations in the light most favorable to plaintiff, it is plausible that Nickel’s omission of Miller’s condition and history from her *991 transfer form constituted indifference to the risk of serious harm. With respect to Tobiasz, although his report suggests that he had not reviewed Miller’s chart and file, presumably he would have greater access to Miller’s chart and file from WRC as a medical professional than the security defendants. At the pleading stage, it is perhaps more prudent to allow plaintiff to proceed with discovery on this claim.
Plaintiff also alleges sufficient facts to suggest that the security defendants failed to take reasonable steps to prevent the harm. According to the complaint, the security officers failed to call for medical attention despite finding Miller with no pulse and not breathing on the floor of his cell with a white cloth wrapped around his neck. Plaintiff further alleges that the security officers waited to assemble an entry team and then applied restraints before removing the ligature from around Miller’s neck.
Having established that plaintiff has alleged facts that, if proven, show the defendants violated a constitutional right, we must evaluate whether they would be entitled to qualified immunity under the second prong of the qualified immunity analysis; that the constitutional right must be clearly established. The defendants urge this Court to apply a very high threshold for this prong. They argue for an examination of this prong in such a specific manner that virtually nothing besides intentionally harmful actions could be “clearly established.” Under defendants’ analysis, for a right to be clearly established there must be precedent holding that a prisoner has a constitutional right specific to the conduct alleged. However, the cases in this circuit have understood the term “right” in a broader sense. For example, in Cavalieri v. Shepard, we stated that the right that Cavalieri was asserting is “the right to be free from deliberate indifference to suicide.” 321 F.3d 616, 623 (7th Cir.2003) (citing Hall v. Ryan, 957 F.2d 402, 406 (7th Cir.1992)). Here, plaintiff asserts the same right. We therefore conclude that that right was clearly established in 2009 as it was in 1998. See also Sanville v. McCaughtry, 266 F.3d 724 (7th Cir.2001).
For the reasons stated herein, we affirm the denial of dismissal based on qualified immunity for the defendants-appellants.
Affirmed.

. At oral argument, there appeared to be some disagreement about the number of defendants remaining in the case. Plaintiff suggested only Nickel, Tobiasz and the two guards on duty remain defendants. Defendants asserted that based on the District Court’s ruling nine defendants remain.

. Nurse Nickel is referred to variously as Janel Nickel and Jennifer Nickel, and was previously unidentified Jane Doe.