**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 6, 2015[*]
Decided November 9, 2015

**Before**

WILLIAM J. BAUER, *Circuit Judge*

JOEL M. FLAUM, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 15-1549

| | |
|---|---|
| DAJUAN KEY, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Central District of Illinois. |
| | |
| *v.* | No. 14-2286 |
| | |
| CHAD KOLITWENZEW, et al., | Sue E. Myerscough, |
| *Defendants-Appellees*. | *Judge*. |

**O R D E R**

DaJuan Key, a pretrial detainee, brought a deliberate-indifference claim against administrators and security and medical staff at Jerome Combs Detention Center in Kankakee, Illinois, for withholding treatment of his diagnosed mental-health disorders and failing to protect him from self-destructive behavior caused by the lack of treatment. The district court determined that Key's complaint failed to state a claim. *See* 28 U.S.C. § 1915A. Because Key stated claims against a physician's assistant at the facility and

---

[*] The defendants were not served with process in the district court and are not participating in this appeal. After examining the appellant's brief and the record, we have concluded that oral argument is unnecessary. *See* FED. R. APP. P. 34(a)(2)(C).

corrections officers, we vacate the judgment of dismissal regarding those claims, but we affirm the judgment of dismissal of the claim against the remaining defendants.

According to Key's complaint, the allegations of which we accept as true, a physician's assistant abruptly discontinued his prescriptions for psychotropic medication without evaluating him, and this was done despite his diagnosed conditions of schizoaffective disorder, bipolar disorder, and post-traumatic stress disorder. After three weeks of requesting to be seen by health services, Key met with the physician's assistant and a psychological social worker—on October 31, 2014—which, as we will see, is a key date in this case. At the meeting, he reported thoughts of self-mutilation and suicide and implored the physician's assistant to represcribe his medication. The physician's assistant denied Key's request. Key asked if he could see a psychiatrist but again was rebuffed. Key then told the physician's assistant that he was going to cut himself "because he couldn't get the self-harm thoughts out of his head."

Over the following week, Key cut himself on at least four occasions, using small pieces of metal, a sprinkler head, and his fingernails. Though corrections officers intervened each time and placed him in a restraint chair, Key alleged that the corrections officers ignored his oral warnings about his impulses to self-harm and rejected his requests for preemptive, preventive measures. The officers also placed him on suicide watch after the first and third incidents. (The second incident occurred during his first stint on suicide watch.) These measures—use of a restraint chair and suicide watch—were used, he said, only after he had already injured himself, and inexplicably he was taken off suicide watch without an assessment of ongoing risk.

In addition to damages and a declaratory judgment stating that the defendants' actions had violated his Fourteenth Amendment rights, Key sought a preliminary injunction ordering his medication represcribed and an examination by a psychiatrist. He also requested additional physical and mental-health attention for other detainees placed in restraint chairs or housed in administrative segregation.

The district judge screened the complaint, *see* 28 U.S.C. § 1915A, and dismissed it for failure to state a claim. Key failed to state a deliberate-indifference claim, the court explained, because he alleged nothing more than a difference of opinion about the proper course of treatment and, further, he did not allege that the physician's assistant could have been aware of the risk that he would cut himself before his examination on October 31, 2014. The judge also dismissed this claim with regard to the other defendants, noting that Key admitted receiving medical care each time he cut himself

and that he did not allege any actions by the psychological social worker other than appearing at the October examination.

Regarding the failure-to-protect claim, the judge concluded that, based on Key's allegations, the corrections officers responded sufficiently each time they caught Key cutting himself: they stopped the behavior, treated his injuries, and had him restrained and monitored. As for the administration, the judge concluded that the acknowledged presence of a physician's assistant and a psychological social worker belied Key's allegation that the administrators failed to employ "licensed mental health staff." The judge also considered Key's request for a preliminary injunction, but denied it, concluding that his allegations did not demonstrate a reasonable likelihood of success on the merits.

On appeal Key first challenges the district judge's characterization of his allegations regarding the physician's assistant as a "mere disagreement" over the treatment offered to him. He reiterates that he received no treatment at all: his repeated requests and grievances identifying self-harming thoughts were ignored, and his verbal warnings to staff were disregarded.

The district judge misconstrued Key's claim. While a disagreement with a doctor's medical judgment will not establish deliberate indifference, *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), deliberate indifference cannot be precluded if an inmate alleges that his medical treatment was based on a failure to treat, *see Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). Key alleged that the physician's assistant didn't treat his disorders at all and that his complaints about his condition were otherwise ignored. This was sufficient to state a claim.

Key next takes issue with the district judge's determination that he did "not allege[] any facts that show [that the physician's assistant] could have been aware of the risk of Plaintiff cutting himself prior to the examination on October 31, 2014." His complaint, Key maintains, alleged that the physician's assistant ignored him, despite being fully informed about his risk of self-mutilation either before October 31 or at the examination that day when he personally told the assistant as much.

We conclude that the district court was too hasty in dismissing the claim against the physician's assistant, especially given its duty to construe Key's pro se complaint liberally, *see Erickson v. Pardus*, 551 U.S. 89, 90 (2007). Prison doctors may exhibit deliberate indifference to a known condition through inaction, *Gayton v. McCoy*, 593 F.3d 610, 623–24 (7th Cir. 2010); *Rodriguez*, 577 F.3d at 830, or by delaying necessary treatment

and thus aggravating the injury or needlessly prolonging an inmate's pain, *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012); *Smith v. Knox Cnty. Jail*, 666 F.3d 1037, 1039–40 (7th Cir. 2012); *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010). Key set forth a plausible account of facts showing that the physician's assistant demonstrated deliberate indifference through inaction. The assistant cut off medication, despite being aware of Key's condition: the condition had been previously diagnosed, Key had been receiving medication to treat it, and Key told him at his appointment on October 31 about the self-mutilating impulses he experienced when he was off the medication.

Regarding his failure-to-protect claim against the corrections officers (defendants Brown, Lesage, Voss, Aramovich, Emery, Jurgens, Mayo, O'Neil, and Coash), Key challenges the court's conclusion that they responded sufficiently when they "notified supervisors of Plaintiff's ongoing situation, provided prompt first aid, removed potentially harmful items from Plaintiff's cell, secured Plaintiff in a restraint chair, and placed Plaintiff on suicide watch, when appropriate." Key argues that the judge's characterization of the defendants' response overlooks their failure to take necessary preventive measures *before* he harmed himself.

To state a failure-to-protect claim, Key must allege that corrections officers knew that he faced a substantial risk of serious harm and deliberately disregarded the risk. *See Estate of Miller, ex rel. Bertram v. Tobiasz*, 680 F.3d 984, 989 (7th Cir. 2012). This he has done: he alleged that immediately before each incident of self-mutilation, he informed the officers of a substantial risk of serious harm, yet they disregarded his warnings and requests to be restrained. In one incident, for instance, Key alleged that officers permitted him to cut himself until he managed to have his mother call the facility and demand he be restrained. And in another Key says that an officer saw him cutting himself but only insulted him and walked away. This claim too must be remanded for further consideration.

Though we recognize that a more complete examination of the facts may show that the corrections officers and the physician's assistant responded adequately based on their knowledge of Key's condition and the risk of harm, those are facts to be developed during discovery. *See McGowan*, 612 F.3d at 641. At this stage Key has stated claims of deliberate indifference, and his allegations put the defendants on notice that they are accused of disregarding a known risk of serious harm.

Finally Key does not develop any challenge to the district court's dismissal of the claims against the administrators or the psychological social worker. Also, the request

for injunctive relief is moot because Key is no longer detained at Jerome Combs Detention Center.

We AFFIRM the dismissal of Key's claims against the psychological social worker Amy Jane Doe and the administrators: Chief of Corrections Chad Kolitwenzew, Assistant Chief of Corrections Robert Schultz, and Sheriff Timothy Bukowski. With regard to the remaining defendants, we VACATE the judgment of the district court and REMAND for further proceedings.