**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 14, 2018[*]
Decided March 13, 2018

**Before**

WILLIAM J. BAUER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 17-2148

| | |
|---|---|
| CHRISTOPHER DAVIS-CLAIR, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *v.* | No. 17-CV-389-JPS |
| OFFICER TURCK, et al., *Defendants-Appellees*. | J.P. Stadtmueller, *Judge*. |

**O R D E R**

Christopher Davis-Clair, a Wisconsin prisoner, appeals the dismissal of his suit against prison staff for violating the Eighth Amendment. *See* 42 U.S.C. § 1983. He alleges they ignored warnings that he would attempt suicide (as he later tried) if he was ordered to be transferred to a prison far from his family. The district judge dismissed the complaint for failure to state a claim because Davis-Clair did not plausibly allege

---

[*] The defendants were not served in the district court and are not participating in this appeal. The defendants are identified only by last name, so we use the names and titles in the complaint. We agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

that any defendant was indifferent to his risk of suicide. That reasoning was correct, so we affirm.

We accept as true the allegations in Davis-Clair's complaint and its attachment. *See* FED. R. CIV. P. 10(c); *Arnett v. Webster*, 658 F.3d 742, 751–52 (7th Cir. 2011). Prison administrators at Green Bay Correctional Institution considered transferring Davis-Clair to a higher security prison after he received two major conduct reports. Upon learning of his impending transfer, Davis-Clair confided to a prison social worker that this transfer "was not a good idea" because the other prison was "far away" from his home and without family visits he would attempt suicide. He also wrote to the prison's psychological services unit asking "to see someone" because he thought that transferring him "away from his family … would make him suicidal." He never received a response from that unit.

The Program Review Committee held a hearing on the transfer issue, and Davis-Clair asked the committee members to have someone check on him "if I get approved to go to" the higher security prison because "I know I will attempt suicide." Two committee members, identified as O'Dell and Fancois, promised to report Davis-Clair's comment to the supervisors of psychological services and the security staff at both his current and future institutions. And in the hearing report regarding the transfer, the committee ordered that Davis-Clair's comment regarding "self-harm … be communicated" to the staff of the new prison.

After the committee issued its report, a correctional officer identified only as Turck broke the news to Davis-Clair that he was being transferred. Davis-Clair responded, "I need you to get the psychologist over here because if not you all are going to have to send me to observation." (Under prison regulations, prisoners who pose a danger to themselves or others may be placed under observation for monitoring. WIS. ADMIN. CODE DOC § 311.04(1).) Turck replied, "Just pack your shit and [we] will get to that later," and then briefly walked away. Davis-Clair began to cut his wrist with a razor blade. Minutes later Turck returned, ordered Davis-Clair to stop, and summoned a sergeant who convinced Davis-Clair to stop cutting himself. Turck then placed him in observation.

Davis-Clair sued five officials alleging that they were deliberately indifferent to his risk of suicide: the social worker, the supervisor of psychological services, Program Review Committee members O'Dell and Fancois, and Officer Turck. At screening the judge dismissed the complaint with prejudice for failure to state a claim. 28 U.S.C. § 1915A. The judge reasoned that Davis-Clair did not plausibly allege that any

defendant knew of, and was indifferent to, a substantial risk that Davis-Clair might attempt suicide.

We take a fresh look at Davis-Clair's complaint. *See Arnett*, 658 F.3d at 751. To plead an Eighth Amendment claim, he needed to allege plausibly that prison staff (1) knew of a significant likelihood that he would imminently attempt suicide and (2) failed to take reasonable steps to prevent his attempt. *See Estate of Miller ex rel. Bertram v. Tobiasz*, 680 F.3d 984, 989–90 (7th Cir. 2012); *Sanville v. McCaughtry*, 266 F.3d 724, 737 (7th Cir. 2001). The gist of his complaint is that the defendants knew but ignored that a transfer would make him suicidal and he would not have harmed himself had psychological services been provided.

We agree with the district judge that Davis-Clair has "plead[ed] facts [that] show he has no claim." *McCready v. eBay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006). A risk of future harm must be "sure or very likely" to give rise to "sufficiently imminent dangers" before an official can be liable for ignoring that risk. *See Baze v. Rees*, 553 U.S. 35, 50 (2008) (Roberts, C.J., plurality opinion) (emphasis omitted); *Helling v. McKinney*, 509 U.S. 25, 33–34. (1993). Davis-Clair remarked to the social worker that he would attempt suicide at some unspecified time *after* his transfer. That does not convey an imminent risk. Davis-Clair responds that the social worker—and the other defendants, for that matter—violated section 311.04(1) of the Wisconsin Administrative Code, which he believes required them to place him in observation status. But the Constitution does not require compliance with state law. *Snowden v. Hughes*, 321 U.S. 1, 11 (1944); *Whitman v. Nesic*, 368 F.3d 931, 935 n.1 (7th Cir. 2004).

The claim against the supervisor of the psychological services unit also fails because the complaint's allegations preclude a reasonable inference that the supervisor recklessly disregarded a significant risk of imminent suicide. *See Estate of Miller*, 680 F.3d at 989. Davis-Clair's note to the psychological services unit, like his statement to the social worker, reflected that he might attempt suicide *after* a transfer and thus it did not convey an imminent risk. Similarly, the report of the Program Review Committee communicated no imminent risk. Davis-Clair alleges that he told committee members that he would attempt suicide if he was approved for transfer to the higher security prison, but this comment does not state when he might make his attempt. Even if we assume that imminence is implied and further assume that the comment was reported to the supervisor of the psychological services unit, Davis-Clair alleges only that the supervisor did not respond to a single, secondhand report. That is an allegation of negligence, which is insufficient to state a claim for deliberate indifference.

*See Collignon v. Milwaukee County*, 163 F.3d 982, 988–89 (7th Cir. 1998). This is not a case where the supervisor is alleged to have disregarded several notices of an imminent risk of suicide, including firsthand reports directly from the prisoner, as was the case with the nurse and psychological services worker in *Estate of Miller*, 680 F.3d at 989–91.

Davis-Clair's allegations against Turck reveal that the officer responded reasonably under the circumstances. A "request to see a psychiatric crisis counselor does not, *standing alone*, put a prison officer on notice of the imminent possibility of suicide." *Pittman ex rel. Hamilton v. County of Madison*, 746 F.3d 766, 777 (7th Cir. 2014). Davis-Clair commented about needing to go to "observation." Turck told him to prepare for the transfer, left the cell momentarily, and returned minutes later to see Davis-Clair harming himself. Turck intervened immediately, helped stop the suicide attempt, and delivered him to observation. An official who responds reasonably to a risk of harm is not deliberately indifferent to it even if the official fails to avert the harm. *See Farmer v. Brennan*, 511 U.S. 825, 844 (1994); *Estate of Miller*, 680 F.3d at 990.

The claims against committee members O'Dell and Francois collapse because Davis-Clair's allegations reveal that they too responded reasonably to his comment about self-harm. After hearing Davis-Clair say that he would attempt suicide if approved for transfer, they took two protective measures. First, they decided that psychological services and security staff at both institutions needed to know about the comment, and their hearing report ordered that these officials be notified. That was a reasonable response. Davis-Clair has relied on the committee report and the instruction in it for part of his claim, so we may too. *See Carroll v. Yates*, 362 F.3d 984, 986 (7th Cir. 2004) ("[D]ismissal on the basis of facts in [a pleading exhibit] is proper only if the plaintiff relies upon it 'to form the basis for a claim or part of a claim.'" (quoting *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753–54 (7th Cir. 2002))).

AFFIRMED