NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted January 7, 2019[*]
Decided January 15, 2019

**Before**

DIANE P. WOOD, *Chief Judge*

DIANE S. SYKES, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 18-2270

| | |
|---|---|
| RONALD KUPSKY, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Eastern District of Wisconsin. |
| | |
| *v.* | No. 18-C-385 |
| | |
| TENESA McLAREN, et al., | William C. Griesbach, |
| *Defendants-Appellees*. | *Chief Judge*. |

## O R D E R

Ronald Kupsky, a Wisconsin inmate, appeals the dismissal of his suit against prison medical staff for violating the Eighth Amendment. He alleges that the staff acted with deliberate indifference by ignoring his warnings that he would attempt suicide if they did not provide mental-health treatment and allow him to eat his meals alone in

---

[*] The defendants were not served in the district court and are not participating in this appeal. Some defendants are identified only by last name, so we use the names and titles in the complaint. We agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

his cell. The district judge screened his complaint, determined that Kupsky did not plausibly allege that any defendant was indifferent to his risk of suicide, and dismissed the complaint. We affirm.

We accept as true the allegations in Kupsky's complaint and its attachments. *See* FED. R. CIV. P. 10(c); *Arnett v. Webster*, 658 F.3d 742, 751–52 (7th Cir. 2011). Kupsky alleges essentially that several doctors and their supervisor in the psychological services unit at his prison were indifferent to his need for medical care, causing him to harm himself and even attempt suicide.

The first doctor to treat Kupsky was Dr. Tenesa McLaren, his "main clinical contact." He had been directed to her by an unidentified employee in the psychological services unit whom he had warned that he did not think that he could keep from engaging in self-harm "under [his] current placement status." Kupsky met with Dr. McLaren but alleges that she and her supervisor were both indifferent to his risk of suicide. Dr. McLaren provisionally diagnosed him with "Other Specified Personality Disorder with schizoid personality features" but refused to provide any further treatment. Kupsky attached to his complaint Dr. McLaren's clinical report, which states that Kupsky did "not meet all criteria for a diagnosis of Schizoid Personality Disorder" and that he denied during the interview having any present suicidal ideations or a history of mental-health treatment. Kupsky complained about Dr. McLaren to her supervisor, Dr. S. Schmidt, and requested a new doctor. Dr. Schmidt refused the request.

When Dr. McLaren took temporary leave, Kupsky was assigned to Dr. DeBlanc, who Kupsky found equally unsatisfactory. He alleges that she also refused treatment and that he later harmed himself "to the point [he] was bleeding." The unit then placed him on observation status to prevent future self-harm. While on observation Kupsky was reassigned to another doctor, Dr. Torria Van Buren, who also refused to treat him. According to Dr. Van Buren's attached report, she placed Kupsky—despite showing "no evidence of a thought disorder"—on observation status after several recent reports of "suicidal ideation and urges to harm himself." Kupsky later met with another doctor who placed him on "feed-cell" status, meaning he had approval to eat alone in his cell.

Dr. McLaren eventually returned to work, and Kupsky alleges that she continued to ignore his suicide risk. She informed him that his three-month stint on feed-cell status would not be extended. Kupsky alleges that he warned her that ending his feed-cell status would result in him "going back on obs[ervation]," to which Dr. McLaren replied, "that's fine." Kupsky says that he was placed on observation

status "multiple times" after his meeting with Dr. McLaren, and once he was transported to an emergency room after drinking four ounces of shampoo in an attempt to commit suicide.

Kupsky brought this Eighth Amendment action against Drs. McLaren, DeBlanc, Schmidt, and Van Buren, alleging they all were deliberately indifferent to his risk of suicide. *See* 42 U.S.C. § 1983. Kupsky seeks damages, an injunction mandating his transfer to a mental-health institution for treatment, and in the interim an assignment to the Behavioral Health Unit with a feed-cell status.

At screening the district court dismissed Kupsky's complaint with prejudice for failing to state a claim. The judge concluded that Kupsky did not specify what any defendant failed to do that contributed to his injury other than refusing to extend his feed-cell status permanently. Kupsky's allegations, the judge added, make clear that he was not in imminent danger of harm when he spoke to the defendants. The judge explained that to give rise to a sufficiently imminent danger, a risk of future harm must be more likely than was the case alleged here.

On appeal Kupsky asserts generally that his complaint was sufficient to show that he was entitled to relief. To plead an Eighth Amendment claim, Kupsky needed to allege that his harm was "objectively, sufficiently serious" and that the defendants acted with "deliberate indifference to [his] health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). "To be liable under the Eighth Amendment for an inmate's suicide, a prison official must be cognizant of the significant likelihood that an inmate may imminently seek to take his own life and must fail to take reasonable steps to prevent the inmate from performing this act." *Sanville v. McCaughtry*, 266 F.3d 724, 737 (7th Cir. 2001) (internal quotation marks omitted).

First, Kupsky's complaint fails to state a claim against Drs. McLaren, DeBlanc and Van Buren. A suicide attempt obviously presents a serious harm. *Estate of Miller ex rel. Bertram v. Tobiasz*, 680 F.3d 984, 989 (7th Cir. 2012). But Kupsky's allegations do not plausibly support any inference of deliberate indifference: by his own account, Drs. McLaren, DeBlanc, and Van Buren placed him on observation status "multiple times" upon his self-harm warnings. *See State Bank of St. Charles v. Camic*, 712 F.2d 1140, 1146 (7th Cir. 1983) (removing an inmate's belt and shoelaces are reasonable precautions precluding the possibility of deliberate indifference). Kupsky counters that observation status is not treatment, but it is the process that Wisconsin has adopted for preventing self-harm, *see* WIS. ADMIN. CODE DOC § 311.04(1) (explaining that the purpose of observation is "to ensure the safety of the inmate or the safety of others"),

and the Eighth Amendment requires only that the defendants take reasonable steps to prevent the "unnecessary and wanton infliction of pain," *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976).

Second, Kupsky also fails to state a claim against Dr. Schmidt. Kupsky may have complained to Dr. Schmidt about Dr. McLaren's care and even requested another doctor, but his complaint bears no hint that Dr. Schmidt was ever aware of—let alone recklessly disregarded—any suicide risk. Even though Dr. Schmidt's signature appears on two reports drafted by Dr. McLaren, both reports state that Kupsky denied thoughts of suicide or self-harm.

Lastly, Kupsky's allegations do not support the conclusion that he faced a risk of future injury that was sufficiently imminent. For an official to be liable for ignoring a risk of future harm, the harm must be "'sure or very likely to' … give rise to 'sufficiently imminent dangers.'" *Baze v. Rees*, 553 U.S. 35, 50 (2008) (Roberts, C.J., plurality opinion) (emphasis omitted) (quoting *Helling v. McKinney*, 509 U.S. 25, 33 (1993)). But Kupsky alleged only that he warned defendants that he would need to go "back on obs[ervation]" at some unspecified time in the future after he was removed from feed-cell status. This warning is too vague to convey an imminent risk.

Because the district court dismissed Kupsky's complaint for failure to state a claim, *see* 28 U.S.C. § 1915(g), he has incurred a strike on appeal in addition to the one accrued in the district court, *see Walker v. O'Brien*, 216 F.3d 626, 632 (7th Cir. 2000).

AFFIRMED